**Allan Roy McMINN, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–81–203–CR, 2–81–204–CR.**

Court of Appeals of Texas, Fort Worth.

Sept. 29, 1982.

Discretionary Review Refused Jan. 12, 1983.

Lawrence B. Mitchell, Dallas, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for State.

Before HUGHES, SPURLOCK and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This appeal is from sentences assessed by the jury when appellant pled guilty under two indictments. One charged him with rape, aggravated rape and robbery by threats. The other charged rape, aggravated rape, burglary of a habitation and robbery by threats. Appellant chose to try the punishment phase of the two cases together. The jury assessed punishment at 20 years in cause number 24449R and 99 years in cause number 24450R.

We affirm.

Appellant contends that the trial court erred by admitting into evidence (1) testimony about extraneous offenses, (2) a tire-plugging tool found by police at the scene

of appellant's arrest, and (3) privileged communications between himself and his psychiatrist.

The first ground of error complains that upon cross examination of appellant's psychiatrist, the State was permitted to elicit testimony concerning offenses committed by appellant extraneous to those charged in the two indictments.

 Direct examination of the psychiatrist by appellant's counsel included the following:

Q. All right, Dr. Griffith, you were aware then that he was charged with two offenses; is that correct?

A. That is correct.

Q. And did Mr. McMinn, himself, relate these to you?

A. Yes, he did.

Q. Further, did you go into past family history or his past history leading up to these offenses?

A. *Yes, sir. This is part of the mental status examination to cover not only the present history but all of the past history that we can obtain from the subject or from any other source that we can obtain it.*

\* \* \* \* \* \*

Q. All right. What indicates to you—in your evaluation of Allan, what indicates to you that he is a person that is treatable? What signs or what has he shown you?

A. First of all, when one looks at the history of the offenses, one looks at the history of his domestic life, particularly his married life; they are very coincidental. This is one thing to look at. *Mr. McMinn has no previous history that we know of of any charges against him. He has no juvenile record.* (emphasis added).

\* \* \* \* \* \*

Q. And in your evaluation and in your treatment of, *I believe some eight visits of Allan,* have you noticed tendencies or signs of anti-social behavior?

A. I really have found none. (emphasis added).

\* \* \* \* \* \*

Q. And at the present state, do you feel he's a threat to society?

A. No, I do not.

Q. *Knowing the past history and what you know as far as what ya'll may have discussed and knowing he's charged with such crimes?*

A. Yes, sir. (emphasis added).

At a hearing outside the presence of the jury, defense counsel argued his concern that the State's cross examination would inquire into the doctor's knowledge of appellant's extraneous offenses. He objected on the ground that such testimony would violate the patient-physician privilege. The prosecutor argues, and we agree, that the door was opened by the direct testimony of the psychiatrist. The objection was overruled.

On cross examination, the psychiatrist testified that he had obtained the historical information about appellant from discussions with appellant, his family and defense counsel. The doctor verified that his opinion was based upon the information gathered in those conversations.

Cross examination included the following exchange:

Q. Dr. Griffith, returning to these conversations that Defense Counsel has asked you about, that you have had with the Defendant, on which you based your opinion, did he tell you anything else other than about these two rapes?

A. I'm sure he told me lots of things. I don't really know what you're asking about. Give me some help.

Q. Did he tell you anything else that would lead you to believe, one way or another, that this Defendant is liable to commit sexual offenses in the future?

A. Well, no, it's my opinion that he will not.

\* \* \* \* \* \*

Q. Did the Defendant tell you about any other incident similar to this one—to these two?

A. Not that I recall. I'll go through my notes and see, but I don't re-, I don't have any—you see, I don't know which two we're talking about.

Q. You don't know which two we're talking about?

A. No, sir, I don't.

Q. We're talking about two rapes, Doctor, two sexual offenses.

Did this Defendant tell you about any other sexual offenses other than a rape that occurred on June of 1979 and August 10th of 1980?

A. I have nothing else regarding rape.

Now, there was one—one or two incidents in which he ran through an apartment garden area, as I got it, and pinched two or three women.

Q. You say he pinched them. Pinched them on the arm?

A. Pinched them on the arm, pinched them on the buttocks, pinched them on the breasts. He was running, as I understand, at full speed.

\* \* \* \* \* \*

Q. Doctor, if it will help you any, do you feel this Defendant has been completely open and truthful with you and told you about all his problems?

A. Yes.

Q. And, Doctor, are you not aware of some other problems that this Defendant has had?

A. Well, I don't know what you're calling problems; and therefore, I really can't answer that. I mean—

\* \* \* \* \* \*

Q. What do you have copies of, Doctor?

A. *I have a copy of his confession.*

Q. Now, then, so you're aware of what's in any statements that this Defendant may have made; is that correct?

A. *I have been made aware, I've read them.*

Q. *Did the Defendant relate to you, in your conversations, all those instances?*

A. *Yes, I believe he did.* (emphasis added).

\* \* \* \* \* \*

Q. Did he tell you that about in February of 1980, he grabbed two girls in El Camino Real?

A. Yes, I believe he did.

Q. Do you recall what he told you about that incident?

A. I believe he said it was cold and he grabbed them—I cannot find that in my notes, but I recall him talking about it.

He grabbed them and either they—one of them pulled her pants down or he pulled her pants down and he ran off.

Q. Did he tell you that he told them he had a knife?

A. I don't recall.

Q. You don't recall?

A. No, sir.

Q. Did he tell you he put his finger in her vagina?

A. I recall him telling me that he tried to.

\* \* \* \* \* \*

Q. Do you recall him telling you he tried to have intercourse with her from the rear?

A. Yeah, I recall that, but all of this was a fiasco in terms of anything really happening.

\* \* \* \* \* \*

Q. Again, *did he talk to you about times he had exposed himself?*

A. *Uh-huh.*

Q. *So part of your opinion is based on that as well; is that correct?*

A. *Well, this all entered into the same time frame that we're talking about.*

Q. Talking about time frame is well over a year, though, aren't we, Doctor?

A. Yes.

Q. We're not talking about a month or a week—a bad week the man may have had?

A. No, we're talking about over a year; we certainly are.

Q. Did he talk to you about on August 10, Doctor, grabbing a girl early in the morning that managed to escape and ran off?

A. Yeah.

Q. That's the same day that he raped a girl that he's charged with; is it not, or are you familiar with the dates?

A. I believe that's one of the dates.

Q. Did he tell about on August 22nd exposing himself out there?

A. Yes, sir.

Q. *So you're basing—some of these things you don't remember him telling you about and some of them you do, but your opinion is not based just on these two rapes; is that correct?*

A. No. (emphasis added).

■ Evidence of extraneous offenses should be excluded when it confuses and prejudices the issue of guilt of the offense for which an accused is being tried. *Gipson v. State,* 619 S.W.2d 169 (Tex.Cr.App.1981). It may be admitted when it is material and relevant to a contested issue and its relevance is not outweighed by its prejudicial effect. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Cr.App.1972).

■ The State argues that appellant created a contested issue, suitability for probation, to which the extraneous offenses were relevant. We agree. Dr. Griffith's testimony raised issues of the nature and extent of appellant's prior history and his suitability for probation. The evidence of the extraneous offenses disclosed to the doctor by the appellant was relevant to the issue in contest.

The doctor's direct testimony implied that appellant's misdirected aggression had manifested itself only twice, in the two rapes for which he was then on trial, and that in his opinion appellant was no longer a threat to society. However, the other sexual offenses appellant had disclosed to the doctor had significant probative value in the jury's determination of the appellant's ability to reform and the likelihood of future recidivism.

In balancing relevance against prejudicial effect, it must be noted that the appellant already had pled guilty. The danger of confusing and prejudicing the issue of guilt, which underlies the rule against proof of extraneous offenses, are absent when the issue of guilt has been resolved. *Garcia v. State,* 581 S.W.2d 168 (Tex.Cr.App.1979). The relevant value of the doctor's testimony on cross examination at the punishment stage was not outweighed by prejudicial effect.

Appellant's first ground of error is overruled.

The second ground contends that the trial court erred in admitting into evidence a tire-plugging tool found at the scene of arrest.

Appellant was arrested on a parking lot, whereupon police ordered him to lie on the ground, face down. When subsequently ordered to stand up, a tire-plugging tool was found on the ground underneath his body. Appellant unsuccessfully objected to the admission of the tire tool as being immaterial to any issue before the jury.

■ The State is entitled to prove the circumstances surrounding arrest. *Saunders v. State,* 572 S.W.2d 944 (Tex.Cr.App. 1978). The admissibility of evidence of those circumstances is within the discretion of the trial judge, and will not be reversed unless a clear abuse of discretion is shown. *Hernandez v. State,* 484 S.W.2d 754 (Tex. Cr.App.1972).

■ In the case at bar, guilt was admitted and was in no way dependent upon the introduction of the tire-plugging tool. Error, if any, in admitting the tire-plugging tool into evidence was harmless.

Appellant's second ground of error is overruled.

■ The third ground contends that the trial court erred in that the tool's admission into evidence violated appellant's motions for discovery, because it had not been disclosed to him by the State. However, the record fails to show that the discovery motions were ruled upon by the court.

The only ruling made by the court was where the court instructed the State to provide the defendant with anything which would show the defendant not guilty. Nothing is presented for review where no

adverse trial court ruling was obtained on the discovery motion forming the basis for the complaint on appeal. *Wallace v. State,* 618 S.W.2d 67 (Tex.Cr.App.1981).

Appellant's third ground of error is overruled.

The fourth ground contends that the doctor's cross examination testimony concerning appellant's history of sexual offenses violated the "doctor-patient" privilege.

Appellant relies upon Tex.Rev.Civ.Stat. Ann. art. 5561h, which establishes a limited privilege of confidentiality for communications between patients and professionals who diagnose, evaluate, or treat their mental or emotional conditions. At trial, however, appellant's objection only claimed a "doctor-patient" privilege and did not assert the specific privilege of art. 5561h.

We conclude, however, that the doctor's cross examination testimony was properly admitted into evidence, because it went to the subject on which his direct testimony had opened the door. V.A.C.C.P. art. 38.24. Evidence used to fully explain a matter opened up by the other party need not be ordinarily admissible. *Parr v. State,* 557 S.W.2d 99 (Tex.Cr.App.1977).

Appellant's fourth ground of error is overruled, and judgment is affirmed.