**Christopher Don LEVINGSTON,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–01059–CR.**

Court of Appeals of Texas,
Dallas.

April 14, 1983.

**320**

Charles W. Tessmer, Dallas, for appellant.

Henry Wade, Dist. Atty., Kathi Alyce Drew, Asst. Dist. Atty., for appellee.

PER CURIAM.*

After the appellant pled guilty to the offense of aggravated robbery, the jury assessed his punishment at confinement for twenty-five years. He asserts that a new

---

* The following opinion was written by Justice Joe Fish before the effective date of his resignation from this court.

1. For case of reference, we shall refer to the victim as "Hank," although that is not his real name.

---

trial is required because the jury was misled by two instances of improper argument and a conflicting charge. Our review of the record, however, convinces us that no reversible error occurred. Consequently, we affirm.

### Evidence of the Offense

The undisputed evidence, including appellant's testimony, showed that the victim, an 18-year old high school student,[1] worked part-time at a video arcade in Redbird Mall, a Dallas shopping center. Since Hank's job there required him to supply change to customers, he wore a coin changer in his belt and carried a small amount of currency in his pockets, mostly one and five dollar bills. After returning from a dinner break at 8:30 p.m. on March 11, 1981, Hank collected trash from the arcade's storeroom and took it to a garbage crusher, outside the mall. The crusher was next to a brick wall about fifty yards from the Mall's entrance. Hank placed the trash in the receptacle and used his key to place the crusher in operation.

As he turned to walk back to the mall, Hank was approached by appellant and another man. Pointing a sawed-off shotgun at Hank, appellant demanded that Hank surrender his money, and Hank promptly obeyed. The men then instructed Hank to walk back toward the garbage crusher. As Hank was complying, one of the men took his wallet. When the group reached the crusher, appellant ordered Hank, at gunpoint, to climb into it.

While Hank was climbing into the crusher, the group attracted the attention of two security officers at the mall, Coppock and Kendricks. Coppock hollered at the three black men[2] to ask what they were doing; all three jumped over the wall behind the crusher and ran toward the parking lot. Coppock gave chase on foot while Kendricks pursued in an automobile. Kendricks

---

2. Coppock testified he saw *three* black men, one of whom was appellant, and one white man (Hank), who was climbing into the crusher. Hank, on the other hand, testified that he remembered being accosted by only *two* men.

apprehended one of the fugitives as the other two ran toward the automotive department of the Sears store at the mall. One of these fugitives was apprehended in the automotive department by Arroyo, a Sears mechanic. The other, appellant, continued through the Sears store into the parking lot, with Coppock in hot pursuit. As Coppock closed within six feet, appellant whirled around, pulled a shotgun from under his trench coat, pointed it at Coppock's head, and cursed "Come on you white MF I will blow your brains out."

At that point, Coppock heard the gun snap, a sound he identified as either the cocking of the hammer or the pulling of the trigger hitting the firing pin. He fell to the ground. After he realized that he had not been shot, Coppock radioed Kendricks that appellant was armed and dangerous.

Appellant meanwhile continued his flight. When two Sears employees, one of whom was Arroyo, positioned themselves to bar his path, appellant yelled at them, "Don't jack with me or I will blow you away." Arroyo then heard clicks from appellant's shotgun that sounded "like a trigger." Appellant turned and resumed his flight, discarding objects from his pockets as he ran. The abandoned items included Hank's coin changer, appellant's sawed-off shotgun, and something black or brown. Appellant's flight ended when he entered a nightclub at the mall. Arroyo reached the club moments later at the same time that Coppock, Kendricks, and two Dallas police officers arrived. Coppock and one of the officers entered the club and arrested appellant.

### Jury Argument: Appellant's Intent to Harm

Appellant first complains that part of the State's jury argument was founded neither on the evidence nor on reasonable deductions from the evidence. The argument he challenges on that ground is reproduced below.

[Ms. Jerome, Prosecutor]: [B]ut I will tell you three people who are never going to forget his face and it's all because this man chose who he's going to aggravated-

ly rob and who he's going to point that gun at and pull that trigger at but for the grace of God, Ladies and Gentlemen, he is not being tried for two murders.

[Defense Counsel] MR. GOMEZ: Objection, Your Honor. That's outside the record.

THE COURT: Sustained.

MR. GOMEZ: Ask the Jury be instructed to disregard that statement.

THE COURT: The Jury is so instructed.

MR. GOMEZ: Ask for a mistrial?

THE COURT: Overruled.

MS. JEROME: It's a reasonable deduction from the evidence that as [appellant] here was running from the two security officers, he was throwing things from either side of his body into the drainage ditch and we know from the testimony that when he pointed that gun at Coppock and Arroyo and Dewayne Henson that the gun was in full form and not like it is now. We know that when that gun was found under the truck where he ditched it, it was in the form it is now and that it was open and there was nothing in that barrel. I will tell you Ladies and Gentlemen, is a reasonable deduction from the evidence and you can take State's Exhibit No. 2 back in there with you that he destroyed whatever was in that gun.

MR. GOMEZ: Object to—there was no testimony ever that there was any ammunition.

THE COURT: Your objection is overruled.

MS. JEROME: And but for the grace of God I repeat again—

MR. GOMEZ: I object to that.

MS. JEROME: I'm not saying the same thing.

THE COURT: Well, let her finish.

MS. JEROME: Coppock was here to testify as well as Mr. Arroyo because that gun when he pulled that trigger didn't fire. So, think about it. Think about this and is this just an aggravated robbery case that some young punk decided

to pull a pocket knife on somebody? There is only one reason that anybody carries a sawed off shotgun and that as Mr. Nelson told you, there is only one purpose for a sawed off shotgun and that is an unmerciful killing—

MR. GOMEZ: Objection.

THE COURT: Objection is overruled.

MS. JEROME: Let's look at the man. He is dangerous and he is dangerous because he carried a sawed off shotgun and because he is mean and vicious and he is a liar all at the age of seventeen. (R. II—135–137).

◼ The first argument, that three people would never forget appellant's face because he pointed a gun at them during a robbery, finds direct support in the testimony of Hank, Coppock, and Arroyo, all of whom described vividly the sheer horror they felt when appellant pointed the gun at them and threatened to kill them. The trial court sustained appellant's objection to the prosecutor's next argument that only the grace of God saved appellant from trial for two murders. That action, coupled with the prompt instruction to the jury to disregard the argument, cured any error. *Todd v. State,* 598 S.W.2d 286, 294 (Tex.Cr.App. 1980); *Thomas v. State,* 578 S.W.2d 691, 694 (Tex.Cr.App.1979).

◼ Appellant challenges the remainder of the argument on the ground that there was no evidence the shotgun was ever loaded. Appellant's guilt of aggravated robbery was established, of course, whether or not the shotgun was loaded.[3] On the contested issue of punishment, however, appellant told the jury, in mitigation, that he did not intend to harm the persons at whom he pointed the gun. As evidence of his benign intent, appellant testified that the shotgun was never loaded, although he admitted, when questioned by his counsel, that Hank, who perceived that his life was threatened, could not reasonably have determined whether the gun was harmless.[4]

Appellant's testimony was the only direct evidence of his nonviolent intentions and his inability to fire the shotgun because it was not loaded. Other evidence in the record, however, tended circumstantially to belie appellant's assertions. First, he was an admitted liar: within hours after the arrest, he gave the police two different written statements, which were in evidence; each contradicted the other as well as his testimony at trial. Second, the shotgun was in "full form" throughout the time that appellant held it, but by the time Arroyo recovered it, it was broken into an L-shape, with nothing in the barrel. Third, while Arroyo was chasing appellant, he saw appellant discard Hank's coin changer, the shotgun,

3. Aggravated Robbery

(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he:

\* \* \* \* \* \*

2) uses or exhibits a deadly weapon.

\* \* \* \* \* \*

Tex.Penal Code Ann. § 29.03 (Vernon 1974). Definitions

(a) In this code:

\* \* \* \* \* \*

(11) "Deadly weapon" means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury . . . .

\* \* \* \* \* \*

Tex.Penal Code Ann. § 1.07 (Vernon 1974).

4. Q: In other words, you knew that [Hank's] going to be in fear of his life, didn't you?
A: Yes, I believed so.
Q: Even though you are saying that you didn't have the gun loaded, of course, you

couldn't hurt him with it, the fact of the matter is, he didn't know that, did he? And, you knew that he didn't know that?
A: Yeah, I knew that he didn't.
Q: And you knew, as far as [Hank] knew, that gun was loaded and that gun could have gone off and he could be dead?
A: Yes.
Q: And you intended to make him feel that way so you could rob him?
A: I didn't mean for him to feel fear of his life because I told you, you know, I was saying-you know, after he asked me not to hurt him, the only thing I said, was just give me the money, you know.
Q: Nevertheless, what you're telling and what you did doesn't match up because the fact of the matter, the gun was pointed at him and he didn't know it was loaded; is that correct?
A: Right.

and something black or brown, but the unidentified object(s), which the State deduces to have been ammunition, was never found. Fourth, Coppock and Arroyo testified that they heard a sound ("snapping" or "clicking") after appellant pointed the gun at them. Each identified it as the sound made by pulling a trigger. Finally, Coppock and Arroyo testified that appellant's tone of voice and countenance was so menacing when he threatened them verbally that each was convinced he meant it.

The jury, of course, was the judge of appellant's credibility, Tex.Code Crim.Proc. Ann. arts. 36.13 and 38.04, (Vernon 1974), but the State was not required, simply because it had no direct evidence of appellant's intent, to let appellant's assertions go unanswered. *See Porter v. State,* 601 S.W.2d 721, 723 (Tex.Cr.App.1980) (statement that "people can be killed" is a reasonable deduction from evidence of the use of a firearm). We hold that the argument here was proper as either a summation of the evidence or as an effort to draw reasonable inferences from it. *See Vaughn v. State,* 607 S.W.2d 914, 922–23 (Tex.Cr.App. 1980); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Cr.App.1973).

### *Jury Argument: Probation*

While testifying in his own behalf, appellant stated that he had been interviewed before trial by a probation officer and that, after the interview, he signed a report prepared by the probation officer. This testimony was the subject of final argument by the State when the prosecutor rhetorically asked the jury:

MS. JEROME [Prosecutor]: ... You heard defense counsel ask him when he was on the stand, if he had an interview with a probation officer and ask yourself, if he was worthy of that probation, where is the probation officer to testify for him? Ask yourself that question because you didn't hear from him.

MR. GOMEZ [Defense Counsel]: Your Honor, I object to that. That's obviously inadmissible testimony.

THE COURT: Objection overruled.

Appellant complains that this argument was prejudicial because it implied that the probation officer's testimony would have been unfavorable to him. The stated ground of appellant's objection ("That's obviously inadmissible testimony") was too general, however, to apprise the trial court of the complaint he now makes on appeal and was therefore insufficient to preserve error. This ground of objection has been held insufficient to preserve error concerning the admission of evidence. *Spiars v. State,* 50 S.W. 948 (Tex.Cr.App.1899). For identical reasons, we conclude it was ineffective to preserve error in jury argument. An objection to either admission of evidence or to jury argument does not serve its purpose unless it clearly informs the trial judge of the basis of the objection, affording him the opportunity to rule on it and to cure any harm. Compare, *e.g., Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App. 1977) (objection to admission of evidence) with *Cain v. State,* 549 S.W.2d 707, 715 (Tex.Cr.App.1977) (objection to jury argument).

Recent cases illustrating the principle that a general objection to jury argument is insufficient to preserve error include *Earnhart v. State,* 582 S.W.2d 444, 449 (Tex.Cr. App.1979) (objection to argument which stated only "We object to that. That is not a proper argument, not a proper statement. We object to his making a statement like that" insufficient to preserve "failure to testify" ground on appeal); *Graham v. State,* 546 S.W.2d 605, 608 (Tex.Cr.App. 1977) (objection to argument which stated only "I object to his testimony about that. That's off the record" insufficient to preserve "bolstering" ground on appeal); *Sloan v. State,* 515 S.W.2d 913, 914–15 (Tex. Cr.App.1974) (objection to argument which stated only "there was no evidence of any other person [besides accused] heard that statement" insufficient to preserve a "failure to testify" ground on appeal); *Campbell v. State,* 492 S.W.2d 956, 957 (Tex.Cr. App.1973) (objection to argument which stated only "I object to who I knew or what I knew. I know the man, that's right, but I

object to any testimony from Mr. Loving about how" insufficient to preserve "unsworn testimony" objection on appeal).

█ Even if the error was preserved by appellant's objection, we conclude that the error was harmless. Consonant with article 36.20, Tex.Code Crim.Proc.Ann. (Vernon 1981), the Court of Criminal Appeals has held that jury argument is not reversible unless it (1) is manifestly improper, harmful and prejudicial,[5] (2) is violative of a statute, or (3) injects new and harmful facts into the case. *Mathews v. State,* 635 S.W.2d 532, 539 (Tex.Cr.App.1982); *Thomas v. State,* 621 S.W.2d 158, 164 (Tex.Cr.App. 1981) (en banc) (on State's motion for rehearing); *Carter v. State,* 614 S.W.2d 821, 823 (Tex.Cr.App.1981). Whether the prosecutor's argument requires reversal is to be determined on the basis of the probable effect on the minds of the jurors under the facts of each case. *Blansett v. State,* 556 S.W.2d 322, 328 (Tex.Cr.App.1977); *Mayberry v. State,* 532 S.W.2d 80, 85 (Tex.Cr. App.1976) (on State's motion for rehearing).

█ Applying these tests to the present case, we conclude that no reversible error has been shown. When appellant was testifying about his interview with the probation officer, the State objected that what the probation officer told him regarding the terms and conditions of probation was hearsay, but the State's objection was overruled.[6] From the jury's standpoint, the prosecutor's argument, as well as appellant's objection to it ("That's obviously inadmissible testimony"), may have been understood as referring to the State's previous objection that appellant's testimony about his interview with the probation officer was inadmissible.

In light of appellant's guilty plea, the sole issue for the jury to decide was punishment, i.e., how many years appellant should be confined in the penitentiary and whether he should be granted probation. Since probation was legally impermissible if the jury decided, as it did here, on a term of confinement in excess of ten years, *see* art. 42.12, § 3a, Tex.Code Crim.Proc.Ann. art. 42.12, § 3a (Vernon 1979), improper jury argument concerning probation was harmless. *Atwood v. State,* 537 S.W.2d 749, 751 (Tex. Cr.App.1976).

Thus, under the foregoing tests for determining reversible error in jury here, consisting of only twenty-nine words out of a jury argument of twenty-four pages and a trial of 140 pages, improperly affected the punishment assessed by this jury. *See Curtis v. State,* 640 S.W.2d 615, 618–19 n. 4 (Tex.Cr. App.1982) (single sentence of five words, though improper, did not affect punishment assessed by jury).

### Jury Charge

Finally, appellant claims that the court's charge to the jury was conflicting on the issue of punishment. He argues that the first page, which coupled an instruction to find appellant guilty with an instruction to assess punishment at confinement in the penitentiary (without mentioning probation), was at odds with instructions regard-

---

5. A determination that jury argument is manifestly improper, harmful, and prejudicial must be made in light of *the record as a whole, Ballew v. State,* 640 S.W.2d 237, 242 (Tex.Cr. App.1980); *Simpkins v. State,* 590 S.W.2d 129, 136 (Tex.Cr.App.1979).

6. The dissent argues that *Schulz v. State,* 446 S.W.2d 872 (Tex.Cr.App.1969) and *Logan v. State,* 455 S.W.2d 267 (Tex.Cr.App.1970) "determined that an expert's opinion as to whether probation or confinement would be best for the accused was not admissible." Far from supporting such a rule, those cases hold only that the trial court did not err in excluding the testimony of an expert on the facts there presented. They do *not* hold, as the dissent

supposes, that the trial court *would have erred* in admitting such testimony. *See McMinn v. State,* 640 S.W.2d 86, 90 (Tex.App.—Ft. Worth 1982, p.d.r. ref'd) (discussion of State's right to cross-examine psychiatrist whose testimony was offered by accused regarding his suitability for probation). The dissent's premise that the testimony of an expert regarding probation would not be admissible, although that question has never been decided, is nevertheless the foundation for its conclusion that the prosecutor's jury argument here was prejudicial. In view of our opinion that any error was not preserved or was harmless, we need not reach the important but novel issue asserted by the dissent to be settled law.

ing probation on the following pages. Consequently, he maintains, the charge is fundamentally erroneous, despite his failure to object to it at trial.

The portion of the charge which, according to appellant, creates a conflict reads as follows:

> You are instructed to find the defendant guilty as charged in the indictment *and* assess his punishment *at confinement in the Texas Department of Corrections* for not less than 5 years nor more than 99 years on life and in addition thereto, a fine may be assessed not to exceed $10,-000.00.

(emphasis added by appellant). Appellant does not appear to contend that subsequent portions of the charge incorrectly or inadequately instructed the jury on its power to recommend probation; rather, he urges that failure to refer to probation in the quoted paragraph rendered the later instructions concerning probation confusing to the jury.

 When evaluating the charge, the reviewing court will not consider isolated statements which in themselves appear to be prejudicial but will view the charge as a whole. *Jackson v. State,* 591 S.W.2d 820, 825 (Tex.Cr.App.1979) (on motion for rehearing); *Crocker v. State,* 573 S.W.2d 190, 207 (Tex.Cr.App.1978). Viewing this charge as a whole, we conclude that it correctly instructed the jury on the law of punishment applicable to this offense. Consequently, no fundamental error is shown. *See Henderson v. State,* 617 S.W.2d 697, 700 (Tex.Cr.App.1981); *Kemner v. State,* 589 S.W.2d 403, 409 (Tex.Cr.App.1979).

Affirmed.

AKIN, CARVER, STOREY, ALLEN, GUILLOT, JJ., joined in majority.

GUITTARD, C.J., filed concurring opinion in which VANCE, J., joined.

SPARLING, J., filed concurring opinion in which AKIN, ROWE and MALONEY, JJ., joined.

WHITHAM, J., filed dissenting opinion in which STEPHENS, J., joined.

GUITTARD, Chief Justice, concurring.

I cannot agree with that part of the opinion of Justice Fish holding that counsel for appellant did not make a sufficient objection to the prosecutor's comment concerning the absence of testimony from the probation officer. Otherwise I agree with the opinion and concur in affirming the judgment.

SPARLING, Justice, concurring.

I do not believe that the prosecutor's argument commenting on the absence of the probation officer was error, therefore, I conclude that the form of the objection or the degree of harm is not material. Accordingly, I concur in the result of the majority, but disagree with their analysis of this ground of error.

During the punishment hearing, the defense counsel elicited the following testimony from his client:

Q. (By Defense Counsel): You realize you are a convicted felon?

A. (By Appellant): Yes.

Q. And you realize you have lost your rights, too and have you had an interview with the probation officer?

A. Yes.

Q. Someone has interviewed you from the probation office and has talked to you?

A. Yes, ma'am, Mr. Wolfe (phonetic).

Q. Okay. When was that?

A. I don't remember but it was on a Thursday—no, on a Thursday or Friday and I don't remember.

Q. Did he write a probation report that you signed?

A. Yes.

Q. Now, you realize in the event that you are put on probation, you're going to have to live like you're living in a glass house?

A. Yes.

Q. And you realize that the terms and conditions of probation described by the Code of Criminal Procedures are a list of law—a long list of do's and don't's?

MR. JEROME: I object to the leading nature of the question.

THE COURT: Don't lead the witness.

BY MR. GOMEZ:

Q. As a part of that interview, were you told—

MS. JEROME: Object to hearsay.

THE COURT: I will let him proceed. You may proceed.

BY MR. GOMEZ:

Q. Were you told that there were rules and regulations that needed to be followed?

A. Yes.

Q. Now, one of those rules is that you cannot commit an offense against the laws of this State?

A. Yes, it was.

Q. And that if you did break the law that your probation would be revoked and that for any period and for that period you would be behind bars?

A. Yes.

Q. Were you also told you would have to pay a probation fee?

A. Yes, $15.00 a month.

Q. And you were told you would have to report to a probation officer?

A. Yes.

Q. Were you told you had to avoid vicious habits?

A. Yes.

Q. Were you told you would have to avoid being with anybody or even being acquainted with anybody that has a criminal record?

A. Yes.

Q. Were you told you might be committed to some social program for treatment if the Judge or the Jury might see fit to put you in?

A. No.

Q. If that was a condition of probation and you were told that, would you do that?

A. Yes.

Q. And you realize that if you did not do any of those things I just told you about, you would be back in jail in a matter of hours, probably?

A. Yes, I realize that.

Q. And if you don't pay the $15.00 for probation fees, you would be back in jail?

A. Yes.

Q. And was another condition of that probation is that you would pay restitution in the amount of $20.00 to Mr. Henson?

A. No, that wasn't in there.

Q. You were told you would have to pay him back anything he suffered?

A. Yeah, he told me that.

Q. Whatever that was and you realize if you don't do that they would put you back in jail?

A. Yes.

Q. If you received probation, would you or would you not follow the rules?

Q. Yes, I would.

I would hold that the gist of the above testimony is that the appellant was interviewed, inspected, admonished, groomed and signed up by the probation department. This testimony may mislead a jury into believing that probation was a foregone decision by the criminal justice system, and their job was only to ratify that decision. The prosecutor objected that the testimony was hearsay, and the court, I would hold, erroneously overruled the objection. The only avenue remaining to the prosecutor was to comment in argument on appellant's failure to call the probation officer as a witness. This comment is not outside the record because it was apparent from the record that a probation officer existed, that he was not called as a witness, that he was not unavailable as a witness, and that he had information that was worth repeating in court. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). A comment on his absence appears logical. Therefore, I agree with the result reached by the majority but, I would not label the prosecutor's statement error.

WHITHAM, Justice, dissenting.

I respectfully dissent. In my view the trial court committed reversible error in allowing the prosecutor to comment on ap-

pellant's failure to call a probation officer as a witness. Accordingly, I would sustain appellant's second ground of error and reverse and remand.

During final argument at the punishment phase of trial the prosecutor made the following remark:

> MS. JEROME [Prosecutor]: ... You heard defense counsel ask him when he was on the stand, if he had an interview with a probation office [sic] and ask yourself, *if he was worthy of that probation, where is the probation officer to testify for him?* Ask yourself that question because you didn't hear from him. [emphasis added].
>
> MR. GOMEZ [Defense Counsel]: Your Honor, I object to that. That's obviously inadmissible testimony.
>
> THE COURT: Objection overruled.

It will be noted that the majority fails to discuss whether the prosecutor's reference to the probation officer was error. From this I presume the majority concludes that the remark was error. The majority disposes of this error upon two grounds. First, that appellant's objection was too general to apprise the trial court of the complaint he now makes on appeal and was, therefore, insufficient to preserve error. Second, that the error was harmless.

First, let us consider the form of the objection. As will be shown elsewhere in this dissent, the testimony of the probation officer tendered by the prosecutor to the jury in his remark would not be admissible in evidence. Presumably, the majority would require trial counsel to further make known to the trial court why the testimony is "obviously inadmissible" even to the extent of pointing out that the prosecutor by his remark was advising the jury that the probation officer, if called to testify, would testify that appellant should not receive probation. In my view the majority requires too much of trial counsel. The present case does not involve the situation in which the trial objection differs from the complaint on appeal. Rather, the majority concludes that the objection did not say enough to the trial court. I disagree.

When appellant told the court that the prosecutor's remark is "obviously inadmissible testimony" he properly and adequately apprised the trial court of the complaint he now makes on appeal. Perhaps the majority's holding that the objection was too general tells us something about lawyers when they become appellate judges. As appellate judges we should not ignore the stress and the ebb and flow of a hotly contested trial. To require a trial lawyer to articulate a better objection than made in the present case ignores the reality of the pit. We on this court have as much time as we wish to put down on paper our reasons. The trial lawyer who must, as the battle rages, rise to his feet and orally state his objection does not enjoy that great luxury.

I turn now to a discussion of why the prosecutor's remark constituted error. The probation officer was not called to testify. Appellant argues that it was error to allow the prosecutor to comment on appellant's failure to call the probation officer as a witness because the probation officer's testimony would have been inadmissible. I agree. In the present case, the prosecutor's remark concerning the probation officer was specifically directed at the absence of testimony from the probation officer bearing on appellant's fitness for probation and left the clear impression that the probation officer was not called because he opposed a probated sentence. In *Schulz v. State,* 446 S.W.2d 872 (Tex.Cr.App.1969), the accused proffered testimony of a psychiatrist that it would be better for the accused to be placed on probation than be sentenced to the Department of Corrections. The court held that the trial court did not err in excluding the testimony. Observing that the practice of admitting such testimony would cause a battle of the experts, the court concluded that the testimony would invade the province of the jury. 446 S.W.2d at 874. Thus, the Court of Criminal Appeals determined that an expert's opinion as to whether probation or confinement would be best for the accused was not admissible. In *Logan v. State,* 455 S.W.2d 267 (Tex.Cr.App.1970), the accused proffered testimony of a proba-

tion officer concerning the primary requirement of an applicant for probation and the purpose of probation. The Court of Criminal Appeals in its opinion treated the proffered testimony as similar in nature to that of the psychiatrist in *Schulz* and again held that the trial court did not err in excluding the testimony.

In the present case the issue is not the admissibility of evidence but rather the propriety of the prosecutor's jury argument commenting on the fact that the appellant did not proffer the probation officer's testimony because the testimony would be that the accused should not receive probation. In order to reach appellant's contention, it must first be determined whether this testimony from the probation officer would be admissible. Since a probation officer's testimony is not admissible when proffered to prove that an accused should receive probation, I would hold that a probation officer's testimony is likewise inadmissible when proffered to prove an accused should not receive probation. I would further hold, therefore, that in the present case the probation officer's testimony referred to by the prosecutor would be inadmissible.

The State relies on cases which hold that a prosecutor may direct comments at the failure of a defendant to call competent and material witnesses. I do not find these cases on point, however, for in each of those instances the witnesses were both available and their testimony admissible. *O'Bryan v. State,* 591 S.W.2d 464, 479 (Tex.Cr.App. 1979) (*en banc*); *Carrillo v. State,* 566 S.W.2d 902, 912 (Tex.Cr.App.1978); *Kerns v. State,* 550 S.W.2d 91, 96 (Tex.Cr.App. 1977). More to the point are those decisions which have held that it is reversible error for the prosecutor to comment on the failure of a defendant to call a witness who would not be competent to testify. *Grille v. State,* 112 Tex.Cr. 561, 17 S.W.2d 833 (1929). In *Grille* the court held that it was reversible error for the State to comment on the defendant's failure to call a codefendant as a fact witness to the crime. *Grille,* 17 S.W.2d at 834. The court's holding in *Grille* was predicated on the fact that a codefendant was incompetent to testify under the

Code of Criminal Procedure which was in effect at that time. *Winkle v. State,* 506 S.W.2d 891, 897 (Tex.Cr.App.1974); *Grille,* 17 S.W.2d at 834. Therefore, because the probation officer's testimony referred to by the prosecutor would be inadmissible I would hold that it was error to allow the prosecutor to comment on appellant's failure to call the probation officer.

This brings us to a consideration of whether that error was harmless. In my view the error was not harmless and requires reversal. Under the very tests relied on by the majority the argument was manifestly improper, harmful and injected new and harmful facts into the case. In my view the probable effect on the minds of the jurors in the present case caused them to deny appellant probation. In the present case the appellant pleaded guilty. It defies reality not to recognize that, under the facts of this case, he did so hoping for probation. The prosecutor then conceived an adroit means of destroying any chance appellant might have had for probation. Knowing that the jury would perceive the probation officer as an expert in these matters, the prosecutor in his jury argument simply proceeded to advise the jury that the probation officer, if called to testify, would testify that the appellant should not receive probation. Thus, the prosecutor's remarks injected "new and harmful facts into the case."

Furthermore, I cannot accept the majority's argument that the remark was harmless because the term of confinement was in excess of ten years, and, thus, probation legally impermissible. To my mind the jury having heard the testimony of the expert, i.e., the probation officer, recommending against probation, via the prosecutor's remarks, made certain that appellant would not receive probation by assessing the punishment much in excess of ten years. Moreover, if the expert is against probation the jury can easily be persuaded that the accused should be removed from society for a long period of time. If unfit for probation, then unfit to be free in society. Thus twenty-five years to make sure. In the present

case the charge was read to the jurors before they retired to consider their verdict. The court's charge on probation immediately followed the jury's guilty verdict as instructed by the court and before the jury reached the verdict forms. Thus, before the jury reached a consideration of years, fines and probation the jury knew that if the punishment was more than ten years that appellant would not receive probation. And the jury knew that appellant was unfit for probation because the probation officer told them so—through the prosecutor's jury argument. In the present case I cannot agree that the improper jury argument was harmless because appellant was assessed a twenty-five year sentence by the jury.

In conclusion I would only briefly comment on the two remaining reasons advanced by the majority in support of its holding that the error was harmless. In the first instance, the majority would have us believe that the prosecutor's remark was to call the jury's attention to an earlier objection the State had made to appellant's testimony which had been *overruled* by the court and that the appellant's objection in question ("That's obviously inadmissible testimony") had reference to the appellant's earlier testimony to which the State had objected. Thus, the majority asks us to believe that the appellant by the objection in question admitted that appellant's prior testimony to which the State objected, and the court overruled, was indeed "obviously inadmissible testimony." I cannot accept the majority's argument that the prosecutor, defense counsel and the trial court were all talking about the *appellant's* prior testimony at the time of the remark, objection and ruling in question before us on this ground of error. In the second instance, the majority engages in a word count (twenty-nine) out of the jury argument (twenty-four pages and a trial of 140 pages). Prosecutors will find this logic invaluable. Prosecutors who by study and preparation reduce improper remarks to twenty-five words or less escape reversal.

STEPHENS, J., joins in this dissent.