Jerry Richard **MANSELL**, Appellant,

v.

Norma **HENDRICKSON** et al., Appellees.

No. 14816.

Court of Civil Appeals of Texas.

Houston.

June 29, 1967.

Rehearing Denied Aug. 24, 1967.

Carey Williams, Houston, for appellant.

D. L. McClure, Jim Brannon, Houston, for appellees.

BELL, Chief Justice.

Mrs. Norma Hendrickson, administratrix of the estate of Jack Leroy Hendrickson, Deceased, brought suit in behalf of herself, Jack L. Hendrickson, Jr., and Michael Hendrickson, the minor children of Jack Leroy Hendrickson, Sr., and Mr. and Mrs. Ralph Hendrickson, the father and mother of the deceased, against Jerry Richard Mansell, Herder Truck Lines, Inc., and Raymond Kloesel, to recover damages resulting from the death of Jack Leroy Hendrickson. Mr. Hendrickson was killed in an automobile collision that occurred on the Eastex Freeway in Houston on January 24, 1961. Trial was to a jury, but the trial court sustained a motion for an instructed verdict in favor of all defendants except Jerry Richard Mansell. Appellees make no complaint of such action. The jury convicted appellant Mansell of negligence in the particulars hereinafter mentioned. The court rendered judgment in favor of the appellees in the amounts found by the jury, the amount for each being as follows:

1. Norma Hendrickson $77,149.00
2. Jack L. Hendrickson, Jr. 20,000.00
3. Michael Ray Hendrickson 25,000.00
4. Mr. and Mrs. Ralph
   Hendrickson 5,000.00

The jury found appellant negligent in failing to keep a proper lookout, in driving at an excessive rate of speed, and in failing to make proper application of the brakes on his vehicle. Each negligent act was found to be a proximate cause of the collision. The jury found, however, that at the time of and immediately before the collision appellant did not drive his vehicle from one lane of traffic to the other.

The jury found that the deceased did not change the course of his pickup truck and move to the right just before the collision. This was the only contributory negligence issue submitted, though appellant requested others.

On the night of January 24, 1961, appellant was driving his Volkswagen north on Eastex Freeway between eleven and eleven thirty o'clock. At some point between the Griggs Street entrance to the Freeway from the east and the Lyons Avenue exit from the Freeway on the east the Volkswagen and a pickup truck were in collision. This is what we refer to as the first collision. There were no witnesses to this collision. Appellant asserts he remembers nothing about what happened, and Dr. Greenwood gave it as his opinion, based on injuries received by appellant and what had been told him about appellant's claim of inability to remember anything about the collision, that appellant was suffering from retrograde amnesia. Dr. Greenwood had never examined appellant. We, therefore, have a circumstantial evidence case. We must find the facts concerning the first

collision largely from the physical evidence found at the scene.

Eastex Freeway is a six-lane highway running in a north-south direction. There are three lanes of travel on each side of an esplanade. Each lane is 12 feet wide. At a point between the Griggs Street entrance and the Lyons Street exit the collision occurred. The distance between such entrance and exit is, according to the investigating officer, about three long city blocks. The collision occurred nearer the Lyons Avenue Exit. The point of impact was 15 feet west of the east curb. Thus, it was about 3 feet west of the line (and there were lines marking the lanes of travel) marking the east side of the middle lane of travel going north. Both the Volkswagen and the pickup truck skidded across the esplanade into the lanes for southbound traffic, where they collided with the Herder truck, driven by Kloesel in the inside lane. This is referred to as the second collision.

The evidentiary story begins at the automobile repair shop of Mr. Alderson. Appellant had taken his Volkswagen to have damage repaired that had occurred in a previous accident. When appellant first came about 3 or 3:30 the car was not ready and he was told to return about 5:30 or 6 o'clock. When he returned, the car was not ready. He was somewhat unhappy; appeared to be drinking, and left saying he would return in a little while. Finally he returned about 8:30 or 9. At this time appellant appeared to be drinking pretty heavily. Mr. Alderson didn't want to turn the car over to him. His face was flushed and Mr. Alderson smelled liquor on his breath. However, he turned the car over to appellant about 9 o'clock p.m. Alderson would not say whether he was intoxicated or was incapable of driving a car, but he did say he felt appellant should not drive. A previous statement of Mr. Alderson was used in an effort to impeach him concerning whether appellant had been drinking.

Mr. Mansell lived and worked at Cleveland. On the afternoon of the day of the accident appellant came from Cleveland with a friend. On the way to Houston the friend bought some whiskey. Appellant testified that he had one drink of about an ounce or two on the way in and this was all he drank on that day. The balance of Mansell's testimony just dealt with his activities January 24 and really shed no light on the collision. We only note that he testified he drove down Navigation Boulevard to Chartres Street, which latter street feeds into the Eastex Freeway. He started to get on the Freeway via Chartres, and feeder street. Mr. Bailey, his friend, was at this point driving his own car but went on ahead. He understood Mr. Bailey did not see the collision. Mr. Bailey did not testify. He was not subpoenaed. He was called to see if he could testify but was, so appellant reported, unable to get off from work. Mr. Mansell estimated it was from one-half to one mile from where he entered the south end of the Freeway to where the collision took place. The last thing he remembered prior to the accident was being on the feeder street. He did not remember actually getting on the Freeway. He was injured in the accident, was in the hospital about a month, and was off work about three months.

The controlling testimony comes largely from Mr. McGill, the City of Houston Police officer who made the investigation of the accident. He received the call at 11:37 p.m. The scene of the collision was in the 1200 block of Eastex Freeway. The point of the collision was just south of the Lyons Avenue exit. The lanes of traffic were well marked. The esplanade dividing the north and southbound traffic is about six inches high, has a curbing and there was dirt filling between. When he got there the Volkswagen was astride the esplanade headed in a southerly direction. The Chevrolet pickup truck was on the west shoulder of the Freeway facing west and a little to the northwest of the Volkswagen. Hendrickson was lying on the

Freeway and was semi-conscious. McGill was unable to talk to him because of his condition. He was sent to the hospital in the first available ambulance. Appellant was lying partially out of his car with only his feet still in his car. He appeared fairly seriously injured. He was sent to the hospital in the second ambulance.

The officer reconstructed the accident from tracing the path of the Volkswagen and the pickup truck from the point of impact between them to where they came to rest. This was done by following the skid marks on the pavement. As previously stated, the point of impact was in the center lane for northbound traffic 15 west of the east curb line. The point of impact was located by tracing the skid marks laid down by the Volkswagen prior to the impact. From the initial point of impact, because of the characteristic width of Volkswagen tracks, he was able to trace them to the point of the second collision. From the initial point of impact the vehicles went into a side skid in a northwesterly direction, to and across the esplanade. There was a small amount of debris, but no glass, but the point was located by following the Volkswagen skid marks that ran straight north for a distance and then the sideways skid began. The first skid marks straddled the mark between the middle and east lanes of travel. The marks were approximately straight. There was then the side skid for 94 feet to the esplanade and 41 feet in the inside lane of south-bound traffic to the point of the second collision.

The damage, on initial impact, to the pickup was to the right rear side. He could not locate the damage to the Volkswagen caused by the initial impact because its front was so badly damaged by the second collision.

The rear bumper on the pickup, as shown by pictures introduced, was sharply rounded toward the front on each side. On the right side, near the end of the rear bumper of the pickup, there was paint re-sembling that on the Volkswagen. Too, the right side of the bumper was slightly bent. In addition to the outside of the bumper being slightly damaged, it also seemed to be pulled back slightly. Appellant told McGill he had had a few beers. He had the odor of alcohol on his breath, both at the scene and at the hospital. His eyes were bloodshot and his face was flushed. His speech was slightly slurred. Appellant had received some facial injury and had lost some teeth. He exhibited characteristics of a person who was very near intoxication.

After the initial impact and all during the side skid to the northwest, the skid marks left by the Volkswagen were on the east side of those left by the pickup. Based on the physical evidence, it was the officer's opinion that after the initial impact until the second collision the cars were locked together. There was also a dent in the right rear fender of the pickup. From examining appellees' Exhibits 7, 8, 9 and 15 and appellant's Exhibits 2 and 3, all of which are photographs of the right rear, particularly the fender, of the pickup, a pronounced dent appears at the top edge of the fender that would seem to be unrelated to the extensive damage done to the right front side and door of the pickup. Said Exhibits 7, 15 and 3 show damage beginning near the lower part of the fender with a groove extended upward.

Police Officer Chance helped investigate. His testimony is really not enlightening because he was asked few questions. He did confirm the point of impact and the skid marks as related by McGill. He testified that at the scene of the collision he smelled the odor of alcohol on appellant, but he did not feel he was intoxicated. Mr. Chance was primarily handling traffic movement at the scene.

On the day of his death deceased was working at the Manolia Park Garage of the Houston Lighting & Power Company located at 104 North Greenwood. This would be just off Canal Street at the 5200

block. Canal runs generally in an east-west direction. This would be some distance east of the Freeway. He had worked for that company continuously for ten years. He was a journeyman mechanic. His earnings for 1960 were $5,561.10. At that time he was making $2.69 per hour. Pay for overtime was either time and a half or double, depending on the period of the day or night the hours were put in. Since deceased's death there have been two increases in pay for journeymen mechanics. In 1964 the hourly pay was $3.04 and in May, 1965 this was increased to $3.15. For January, 1961, the pay for deceased's work up to his death was $687.97.

Mrs. Hendrickson testified that they lived near Spring, which is a community on U. S. Highway 75 located in north Harris County. Highway 75 is west of the Freeway. She and Mr. Hendrickson were married April 1, 1947, and lived together continuously until his death. She was born November 15, 1929. Mr. Hendrickson was born February 5, 1927. Three boys were born to the marriage, but one of them died prior to trial. The surviving children were: Jack, Jr. and Michael Ray. Jack, Jr., was born January 9, 1948. Michael Ray was born August 26, 1951. Deceased had been working at this particular location for about a year. Mrs. Hendrickson would from time to time ride with him to and from work. He usually drove on Canal to the Eastex Freeway and on the Freeway to Lee Road, and then home by what they call the "back way". We judicially know that Lee Road is some distance north of the point of the collision. She did not, of course, know the route he traveled on his way home. Obviously, however, he was on the Freeway but the evidence does not show where or exactly when he entered the Freeway.

Without quoting each point of error bearing on the issues submitted inquiring as to negligence of appellant, it suffices to say that appellant contends there was no evidence of probative force authorizing the issues or the proximate cause issues. His approach is that there was no evidence showing any negligence that caused the first collision and nothing showing that any negligence, if there was any at all, that proximately caused the death of deceased who was in all probability actually killed in the second collision.

■ In a circumstantial evidence case the burden is on the plaintiff to establish that under all circumstances in evidence the ultimate facts as found by the jury on issues submitted by the court probably occurred. It is not necessary that he exclude that it might possibly have occurred in another manner. It is a matter of balancing probabilities. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792; Burlington-Rock Island Ry. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723; Collier v. Hill & Hill Exterminators, 322 S.W.2d 329, 73 A.L.R.2d 1141, (Tex.Civ.App.), n.w.h.

We have recited the evidence above and it clearly shows that at the time of the impact the deceased was wholly in the center lane of traffic proceeding north. The pickup he was driving was hit from the rear by the Volkswagen that was traveling astride the mark dividing the east and middle lanes of travel. The evidence shows that the pickup was hit at the right end of the rear bumper. There were skid marks laid down by the Volkswagen just before the collision. We do not know just when the pickup entered the Freeway, but on the basis of the evidence it probably entered at Griggs Street. Whether it was at that time ahead of the Volkswagen, we do not know. However, even if it was not, but later passed the Volkswagen, would seem to make no difference under the facts here because the pickup had gotten wholly in the center lane of traffic. There is nothing to show it cut in front of the Volkswagen suddenly because no evasive action by the Volkswagen is indicated. The first collision occurred a few hundred feet north of the Griggs Street entrance and nearer the Lyons Street exit. There would have

been no reason for the pickup to turn off at Lyons. Even if he were doing so, the probability is the cars would have skidded northeast or east instead of northwest. We think in all probability, based on the circumstances in evidence as shown by the physical facts, that the appellant, who had been drinking heavily, failed to discover the pickup ahead of him in time to stop his car at the speed he was going. The pavement was dry as it had not been raining. The highway is a straight one. There was nothing to keep appellant from seeing the pickup. With the pickup ahead that appellant was overtaking, that he should see, it could reasonably be inferred that if he was going to drive partially in the middle lane he was going too fast to stop to avoid a car using either lane because he was unable to do so. The reasonable inference could be drawn that when the Volkswagen hit the right edge of the pickup bumper, the bumpers overlapped. This is particularly true in the light of the damage to the right rear fender of the pickup. It is reasonable to infer from the evidence that the bumpers became locked and that was how the pickup bumper was pulled slightly backward.

▮ We are of the view that there was evidence of probative force to call for the submission of issues on appellant's excessive speed and his failure to keep a proper lookout, and that the jury's answers find support in the evidence and that the answers are not contrary to the overwhelming weight and preponderance of the evidence.

It is unnecessary for us to discuss the question of proper application of brakes.

Appellant complains there is no evidence of casual relation between the deceased's death, which undoubtedly occurred when his pickup and the Volkswagen were hit, as above related, by the Herder truck. Appellant says there is no finding that appellant's negligence caused the second collision or the death of the deceased. He had objected to each proximate cause issue because it merely inquired if the preceding negligent act was "a proximate cause of the collision in question." The effect of this, it is urged, since this was an action for wrongful death and there were two collisions, was to omit an ultimate or controlling issue, that is, which collision caused the death.

▮ It had been stipulated that death resulted from a "collision or series of collisions".

The court had defined "proximate cause" as follows:

"By the term 'proximate cause', as used in this charge, is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event and without which the event would not have occurred; and to be a proximate cause of an event, it should have been reasonably anticipated and foreseen by a person of ordinary care, and prudence, in the exercise of ordinary care, that the event or some similar event would occur as a natural and probable consequence. There may be more than one proximate cause of an event."

Here under the facts the negligent acts of appellant, that continued to operate, drove the pickup into the path of the oncoming truck. He should have foreseen some such or similar result. There was no legally new and independent cause to break the negligence causing the first collision. The original cause in a natural and continuous sequence produced the second collision and the latter would not have happened if the appellant's negligence had not set in motion the whole event.

The court did not err in refusing to submit appellant's requested issues as to whether deceased failed to keep a proper lookout and was driving at an excessive rate of speed. There was no evidence of probative force raising such issues or the related proximate cause issues.

**914**

There was no error in the court rendering judgment for an amount of damages in excess of that prayed for under the peculiar facts of this case. The prayer was for $126,100.00 for damages resulting to the appellees because of the wrongful death of deceased. The total amount of the judgment was $127,149.00. The difference is represented by property damage and funeral expenses. The statement of facts reflects an agreement that these amounts could be added to such amount of damages as the jury found were suffered by Mrs. Hendrickson from the death of her husband.

Appellant by one point complains of the excessiveness of damages as to each appellee and has suggested certain remittiturs. We have read and carefully considered the evidence bearing on damages as to Mrs. Hendrickson and the children and find them not to be excessive. The judgment as to them will be affirmed.

However, we find the award of $5,000.00 in favor of the parents, Mr. and Mrs. Ralph Hendrickson, to be excessive in the amount of $3,000.00. If, within fifteen days from the date hereof a remittitur of $3,000.00 is filed the judgment will be reformed so as to award them $2,000.00, and, as reformed will be affirmed. If the remittitur is not so filed, their cause of action will be severed and the cause as to them will be reversed and remanded.

### On Filing of Remittitur

On June 29, 1967, we indicated by an opinion in writing that if appellees Mr. and Mrs. Ralph Hendrickson would file a remittitur of Three Thousand and No/100 ($3,000.00) DOLLARS on or before July 14, 1967, the judgment of the trial court would be reformed and, as reformed, would be affirmed; and that otherwise the cause of action of such appellees would be severed and the cause as to Mr. and Mrs. Ralph Hendrickson would be reversed and remanded. Such appellees have filed the suggested remittitur of THREE THOU-SAND AND NO/100 ($3,000.00) DOLLARS.

Accordingly, as of this date, the judgment of the trial court in favor of these appellees, Mr. and Mrs. Ralph Hendrickson, is reformed by deducting the amount of THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS from the judgment recovered by said appellees, and, as so reformed, is affirmed.

All of the costs of appeal will be taxed against the appellant. The trial court costs will be taxed as they were taxed in the court below.

Appellant has already filed his motion for rehearing and a motion for conclusions of fact and law. They are each and both overruled.

Reformed and affirmed.