**Benito VALLES, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–82–349–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 10, 1983.

Rachel Capote, Houston, for appellant. Jim Lavine, Houston, for appellee.

Before EVANS, C.J., and DOYLE and COHEN, JJ.

OPINION

EVANS, Chief Justice.

The State brought this action to obtain an order of forfeiture of a sum of money recovered by police officers during the seizure of heroin at appellant's residence. Af-

---

ter a hearing, the court awarded the State the sum of $10,000, being the amount recovered during the narcotics raid.

The sole question raised by appellant's point of error is whether the State proved by a preponderance of the evidence that the money recovered was subject to forfeiture under the terms of the Texas Controlled Substances Act. Tex.Rev.Civ.Stat.Ann. art. 4476–15 §§ 5.03(a), 5.07(b) (Vernon Supp. 1982). That article, in pertinent part, provides:

"Sect. 5.03(a) The following are subject to forfeiture as authorized by this subchapter:

(6) All money derived from the sale, manufacture, distribution, dispensation, delivery or other commercial undertaking violative of this Act.

\* \* \* \* \* \*

Sect. 5.07(b) If the owner of the property has filed a verified answer denying that the property is subject to forfeiture, then the burden is on the State to prove by a preponderance of the evidence that the property is subject to forfeiture. . . ."

The appellant argues that the State failed to prove by a preponderance of the evidence that the money recovered during the search of his residence was "derived from the sale, manufacture, distribution, dispensation, delivery or other commercial undertaking" of a controlled substance in violation of the Act.

On February 2, 1982, three Houston police officers, armed with a search warrant, entered appellant's home to look for narcotics. One of the officers testified that after he read the Miranda warning to the appellant, he asked him whether he wanted to turn over any narcotics. The appellant then led them to a closet and told them to open some burglar alarm boxes where they found approximately seven ounces of heroin. The officer then had a brief discussion with appellant concerning the money:

Q. What did you hear him [the appellant] say?

A. Like I said, I didn't go to get the money. Someone else did. We talked about him dealing heroin for a long period of time. He agreed that he did. We talked to him about that. He agreed—that he told us that the reason he dealt heroin was because he didn't work and that to give his kids the better things in life . . .

The officer testified that the heroin found in the appellant's residence would bring over $5,000 in sales on the street.

Another officer, who had participated in the search, testified that he had the following conversation with appellant:

Q. Did you have any conversation with Benito Valles?

A. Yes, I did.

Q. And would you tell the Court what those conversations were?

A. I had stated I had been getting information on him from 10 to 15 years selling heroin and cocaine, and he said, "Yeah, all good things must come to an end. I knew I was going to get caught sometime."

The officer testified that after the appellant turned over the heroin, he was asked if he had "any large sums of money or heroin" that he wished to surrender. The officer warned the appellant that they were going to search the house anyway and that if he wanted to turn anything over to them, he could. According to the officer, the appellant replied, "No, I'll show you where it is," and then directed them to a sum of money, consisting of ten one thousand dollar bills, hidden under a chest of drawers in the children's bedroom.

The appellant did not cross-examine the State's witnesses, nor did he put on any evidence on his own behalf. On final argument, he argued that the State had failed to meet its burden of proving that the money had been derived from the sale of narcotics and that the State had not excluded the possibility that the money had been saved, borrowed, or otherwise acquired.

Although the parties stipulated that the narcotic seized at appellant's residence was, in fact, heroin, there is no direct evidence showing that the money recovered had been

derived from the sale of heroin or other controlled substance. The State's case, therefore, depends upon whether there is sufficient circumstantial proof to meet its burden on that issue. Since the appellant's point of error challenges only the legal sufficiency of the evidence, we review the evidence under the "no evidence" standard. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

Under the preponderance of evidence standard, the State was required to prove that, under all the circumstances raised by the evidence, it was more reasonably probable than not that the recovered money had been derived from the sale of heroin. *Freeman v. Texas Compensation Insurance Co.*, 586 S.W.2d 172 (Tex.Civ.App. Fort Worth, 1979) *affirmed,* 603 S.W.2d 186 (Tex.1980). Although the State was required to offer proof which did more than raise a mere surmise or suspicion regarding the source of the money, it was required only to prove the fact through a balance of probabilities, and it was not required to exclude every other possible way in which the money might have been acquired. *Mansell v. Hendrickson*, 417 S.W.2d 908 (Tex.Civ.App. Houston [1st Dist.] 1967, no writ).

The appellant admitted that he had been dealing in the sale of narcotics for many years, that he had not worked, and that he was using the money derived from the sale of narcotics to support his family. Based on these admissions, and the circumstances surrounding the recovery of the heroin, the trial court, sitting as the trier of fact, could reasonably have inferred that the money had been derived from the sale of a controlled substance. The appellant did not come forward with an explanation showing any other source of the money, and we find the circumstantial evidence offered by the State to be legally sufficient to support the trial court findings. *See, Texas & Pacific Railway Co. v. Moore*, 329 S.W.2d 293 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.) The appellant's point of error is overruled.

The trial court judgment is affirmed.