**FIFTY–SIX THOUSAND, SEVEN HUN-
DRED DOLLARS IN UNITED
STATES CURRENCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–84–00331–CV.

Court of Appeals of Texas,
El Paso.

Feb. 12, 1986.

Rehearing Denied May 7, 1986.

Duane A. Baker, Joseph (Sib) Abraham, Jr., Charles Louis Roberts, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a judgment of forfeiture, the court below finding the sum of $56,700.00 in United States currency to

be subject to forfeiture under Article 4476–15 Tex.Rev.Civ.Stat.Ann. (Controlled Substances Act) (Vernon Supp.1986). We affirm.

Pursuant to a search warrant, on June 29, 1984, the following items were seized in the apartment of Harry Farah at the places therein indicated and were received in evidence:

In the office portion of the apartment: in a desk drawer:

White envelope containing marihuana.

Vial with cocaine residue.

Brown wood box containing gold plated scale kit.

In the kitchen of the apartment:

Two syringes.

In the vault-like walk-in closet-bathroom combination with a dead-bolted steel door:

In the bathroom portion in the safe inside a cabinet next to the sink:

Vial with over three grams of cocaine.

Money totalling $56,700.00.

In the bathroom portion in a locked drawer:

Student I.D. card from Texas A & M bearing name of Harry Farah.

Two statements to Harry M. Farah from Merrill-Lynch.

Jar with cocaine.

Bags containing vials.

Grinder used for blending, with cocaine residue.

Powder similar to Anositol powder.

Vial with custom top and cocaine spoon with cocaine residue.

Two amber vials with residue.

Seven vials with cocaine residue.

Snorting tubes with cocaine residue.

Pill bottle with cocaine residue.

Paraphernalia—mirror.

Amber pill bottles.

Paper fold with cocaine residue.

Two zip-lock baggies with cocaine residue.

In the bathroom portion either in a locked drawer or in an adjacent cabinet:

Jar with cocaine

Another jar with cocaine.

Cutting agent, Anositol powder.

Plastic vial with cocaine residue.

In the closet portion of the vault inside a suitcase on a shelf:

A name tag from Dallas Market Center bearing name of Harry Farah.

Kit with box, scales, etc., as used by distributors or dealers of cocaine.

Grinder with quantity of cocaine on it.

Box containing thirteen Dilaudid pills—pharmaceutical type of heroin.

Zip-lock baggie with quantity of cocaine.

White bottle containing marihuana.

Paper folds as used for sniffing or sale of cocaine with residue.

Glass vial with cocaine residue.

A magazine article from Esquire entitled "Cocaine, You Can Bank On It."

Two baggies containing marihuana.

Sixteen amber glass vials and plastic, some with residue.

300–400 one gram vials without residue—not used.

Glass bottle with four Dilaudid pills.

Bottle with contents marked "Black Bombers, Black Mollys, Heavy Driving Speed."

Amber bottle with pills.

In apartment—specific place not clear:

Two funnels with cocaine residue.

Two containers of Anositol cutting powder.

Mike Tibuni, a lieutenant in the Narcotics Division who participated in the search, testified without objection that he located approximately a thousand photographs in Farah's apartment. The photographs were not offered or received in evidence. He said he inspected about twenty percent of the photographs. A number of them appeared to have been taken in the apartment, mainly in the bedroom. Some depicted marihuana and cocaine usage involving young men, "young boys involved with narcotics...."

Mr. Rudd, a supervising chemist with the Texas Department of Public Safety, testi-

fied. He stated that the substance in the glass jar, which was found in the safe with the money, was determined to be cocaine with a net weight of 3.187 grams. The substance in the jar, located in the bathroom, contained cocaine with a net weight of 17.065 grams. Another jar, found in the bathroom, contained cocaine in the amount of 20.129 grams. The vials in the bag, found in the bathroom, in two separate samplings, contained .82 grams and 1.881 grams of cocaine, respectively. He testified that the 20.129 gram sample was ninety-seven percent pure as was the .82 gram sample. The purity of the 1.881 gram sample was thirty-six percent. A vial found in the bathroom proved cocaine content in the amount of .1555 grams. Other exhibits testified to contained only traces of cocaine. In regard to the amber pill bottles located in the bathroom, the content was determined to be pharmaceutical pills and tablets including Oxycodone, Methaqualone, methylphenidate, amphetamine, Meprodine, phenmetrazine Diazepam and methamphetamine. The white envelope found in the desk drawer in the office was determined to contain 10.59 grams of marihuana. The grinder, found in the suitcase, contained cocaine powder weighing .29 grams, thirty-one percent pure. The pills in the box, found in the suitcase, were analyzed as Dilaudid. The zip-lock baggie, located in the suitcase, contained .404 grams cocaine, ninety-six percent pure. The white bottle, located in the suitcase, contained 12.56 grams of marihuana. A glass bottle, located in the suitcase, contained Dilaudid. The amber pill bottle, located in the suitcase, contained phenmetrazine.

In summary, Rudd calculated that the cocaine found could have been cut or diluted to "respectable street cocaine" to produce between 80 and 85 grams, assuming twenty-five percent purity. Detective Bogdan testified to a gram being a popular sale amount with a gram bringing $150.00 and a half-gram $80.00 to $90.00.

That the paraphernalia seized was commonly used to prepare and package drugs for sale was established by the State's evidence. A notice of seizure and intention to forfeit was filed July 13, 1984. Hearings were held on August 15 and 22, 1984. At the hearings, in defense, several people testified that Mr. Farah had contracted with them for goods and services to be used in remodeling a hotel and bar in Juarez, Mexico. Mr. Carranza Martinez testified that he was employed by the owner of the hotel/bar to act as an interpreter for him in dealing with Mr. Farah. He testified that from time to time the owner gave him cash to take to Mr. Farah to pay for the goods and services. He stated that the cash ultimately added up to about $58,000.00. One receipt for forty-eight $100 bills was introduced into evidence. The police testified that the money was seized in the same place as the drugs, but no actual purchase was observed. Mr. Farah did not testify.

Mr. Farah's counsel objected to the introduction of all evidence seized in the search and all testimony that referred to the search. The court reserved ruling on the objection. A suppression hearing was being held on the warrant in another trial court. No ruling was ever made by this trial court. The trial court ordered the forfeiture of all funds seized. No requests for findings of fact or conclusions of law were filed.

The Appellant asserts that there was insufficient evidence or no evidence to support the forfeiture, that the court erred in receiving the evidence without ruling on the objection and that the search warrant is invalid under both state and federal law. We first consider the no evidence point and then the insufficiency point. *Henderson v. State,* 669 S.W.2d 385 (Tex.App.—San Antonio 1984, no writ). Since no findings of fact or conclusions of law were filed, we assume that all findings necessary to support the judgment were found. *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 276 (Tex.1979); *Steward v. Jones,* 633 S.W.2d 544, 545 (Tex.App.—Texarkana 1982, no writ). In determining a no evidence point, the court is to look at all supporting evidence and disregard all evi-

dence contrary to the judgment. *Glover v. Texas General & Indemnity Company,* 619 S.W.2d 400, 401 (Tex.1981); *Behring International, Inc. v. Greater Houston Bank,* 662 S.W.2d 642, 648 (Tex.App.— Houston [1st Dist.] 1983, no writ). In reviewing an insufficiency point, the court is to look at all the evidence. *Carter, supra; Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

■ In his no evidence point, the Appellant asserts that this case contains even less circumstantial evidence than that utilized in *Henderson v. State, supra.* In *Henderson,* the court held that circumstantial evidence may be used to show a link between narcotics and money to demonstrate trafficking for forfeiture, but it also held that an inadequate link was shown in that case. *Id.* at 387. *See also: Freeman v. Texas Compensation Insurance Co.,* 586 S.W.2d 172 (Tex.Civ.App.—Fort Worth 1979), *affirmed as modified,* 603 S.W.2d 186 (1980); *Valles v. State,* 646 S.W.2d 636 (Tex.App.—Houston [1st Dist.] 1983, no writ). In *Henderson,* the defendant was searched upon arrest and $903.00 was found in his pocket. The next day, drug paraphernalia was found in his apartment and several months later, his car was found with illegal drugs inside. The court held that the State failed to show any links between the money and the narcotics. In the present case, the money was found with the drugs and with equipment like that used in preparation of drugs for sale. The money was banded by a bank, thus contradicting the Appellant's assertion that he had accumulated the money over a period of time. In a forfeiture proceeding, after a verified denial, a link must be established by a preponderance of the evidence. Tex.Rev.Civ.Stat.Ann. art. 4476–15 5.07(b) (Vernon Supp.1986). The State need only show that the funds were more probably than not derived from the sale of narcotics. *Valles v. State, supra* at 638. Due to the location of the drugs, manufacturing equipment, articles and money, there is some evidence of a link. Appellant's Point of Error No. Two is overruled.

■ In his first point, the Appellant alleges the evidence is insufficient to support the forfeiture. Forfeiture statutes are to be strictly construed. *Amrani-Khaldi v. State,* 575 S.W.2d 667 (Tex.Civ.App.— Corpus Christi 1978, no writ). In *Amrani-Khaldi,* the court held that just showing a large amount of narcotics in one's possession does not lead to an implication of transporting it for delivery. *Id.* at 670. The Appellant also asserts that the evidence in the present case is less than that shown in *Henderson* or *Valles.* In *Valles,* the defendant admitted he was a dealer and turned over the money to the police. *Valles, supra* at 637. No explanation other than drug sales was offered for the source of the funds. The court held that the State must show more than mere surmise or suspicion, but only need demonstrate that under the balance of probabilities the money was more probably than not derived from the sale of narcotics. *Id.* The State need not exclude all possibilities raised by the defendant. *Mansell v. Hendrikson,* 417 S.W.2d 908 (Tex.Civ.App.— Houston [1st Dist.] 1967, writ dism'd).

■ In the present case, the money, drugs, drug preparation equipment and an article on selling drugs were all found together in the Appellant's apartment. The trial judge, as the trier of fact, is the sole judge of the credibility of the Appellant's assertion that the money was obtained from other sources. Under the totality of the circumstances, there is sufficient evidence that more probably than not the funds were derived from the sale of narcotics. Point of Error No. One is overruled.

■ In his third point, which is asserted only as an alternative to an adverse ruling on points one and two, the Appellant asserts that the trial court erred in receiving evidence obtained from the search without ruling on the Appellant's objection to the search and seizure. The Appellant pled an error in the search warrant and objected to the introduction of evidence of the search, but the trial court did not rule on the objection. Another court was holding a suppression hearing on the warrant, but we

have no record of that court's ruling. The exclusionary rule applies to forfeiture proceedings. *Vance v. United States*, 676 F.2d 183, 188 (5th Cir.1982); *U.S. v. One 1979 Mercury Cougar XR7*, 666 F.2d 228, 230 (5th Cir.1982); *Jonas v. City of Atlanta*, 647 F.2d 580, 588 (5th Cir.1981). However, the deterrent effect may be satisfied by other means, thereby leaving no reason to exclude the evidence in a civil action. *Jonas, supra* at 588.

■ The Appellant asserts error in the search warrant which would render the evidence inadmissible. He objected at the introduction of the evidence, but the trial court reserved ruling. The Appellant did not reurge his objection at the close of the evidence and the court never expressly ruled on the objection. The Appellant urges application of the Fifth Circuit ruling in *U.S. v. Renteria*, 625 F.2d 1279, 1282 (5th Cir.1980), that the court must rule on suppression matters. The *Renteria* court applied Federal Rules of Procedure, not Texas rules. There is no equivalent Texas rule to the Federal rule ordering decision; therefore, the *Renteria* holding is not applicable. To preserve error, Texas requires that a defendant obtain a precise ruling on an objection. *De La Garza v. State*, 650 S.W.2d 870 (Tex.App.—San Antonio 1983, PDRR); *Mayfield v. State*, 649 S.W.2d 361 (Tex.App.—Fort Worth 1983, PDRR); *McMinn v. State*, 640 S.W.2d 86 (Tex.App.—Fort Worth 1982, PDRR); *Marek v. Baylor County*, 430 S.W.2d 220 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.); *Hicks v. Fredericks*, 286 S.W.2d 315 (Tex.Civ.App.—Beaumont 1955, no writ). As for this hearing, the Appellant has waived any objection to the testimony by failing to request a suppression hearing, obtain a ruling, or request a continuance until after the suppression hearing in the other court. Point of Error No. Three is overruled.

In his fourth point, the Appellant asserts that even though he did not obtain a ruling since he was unable to fully develop his suppression objection, the Court should consider the evidence shown and rule the warrant invalid. At trial, the Appellant attempted to go behind the warrant, but was somewhat limited in the development of this evidence. The Appellant asserts that the warrant was deficient in its description of the place to be searched, that it does not state probable cause and that it contains "falsehoods intentionally and/or recklessly made which are material to probable cause."

The Appellee responds that any possible error on these grounds was not preserved because a *Franks* motion was not made and that the warrant meets the *Gates* test. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Appellee also responds that the argument of Appellant is conclusory and presents nothing for review. *Phillips v. State*, 511 S.W.2d 22 (Tex.Crim.App.1974). The Appellant's argument is understandable and, contrary to Appellee's assertion, the record is referred to in Appellant's argument. Appellee's conclusory contention is not supportable.

■ In order to go behind the warrant, there must be a substantial preliminary showing of false statements made knowingly, intentionally or with reckless disregard for the truth which are material to probable cause. *Franks v. Delaware, supra*, 438 U.S. at 155, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. A motion for suppression must be made and it must contain allegations of perjury with supporting proof of the deliberate falsehoods pointing out the portions claimed to be false. There must be a statement of reasons, an affidavit or a sworn or reliable statement of other witnesses, and if these are not available their absence must be fully explained. The only falsehoods asserted may be those of the attesting officer, not the informant. Mere negligence or innocent mistakes are not enough. *Id.* 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. In the present case, the Appellant's answer does not contain any of this information; therefore, the trial court correctly limited the scope of the attack on the warrant and Subpoint C of Point of Error No. Four is overruled.

In Subpoints A and B, the Appellant asserts that the warrant is invalid on its face. A warrant must contain enough information for a magistrate to make an independent evaluation of the warrant and affidavit. *Aguilar v. Texas,* 378 U.S. 108, 112, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 727 (1964). In Subpoint A, the Appellant contends that the description of the place to be searched is inadequate under Article 18.04, Tex.Code Crim.Pro.Ann., and *Haynes v. State,* 475 S.W.2d 739 (Tex. Crim.App.1971). In *Haynes,* the warrant gave an address and then described how to get to it: "[t]he room to be searched is reached by going in the left front screen door, then by going in the first door on the right...." *Id.* at 740. A description is adequate if it is enough to apprise the police of where they are to conduct the search. *Id.* If the search is to be conducted in a multi-unit dwelling, the warrant must contain guidelines to apprise the searching officer of which particular unit is to be searched. *Id.* at 741. *Morales v. State,* 640 S.W.2d 273, 275 (Tex.Crim.App. 1982). Technical discrepancies in search warrants do not automatically vitiate their validity. *Bridges v. State,* 574 S.W.2d 560, 562 (Tex.Crim.App.1978). Even if the numerical address is wrong, the warrant may still be valid if the description is adequate to direct the officer to the correct place. *Olivas v. State,* 631 S.W.2d 553, 556–557 (Tex.App.—El Paso 1982, no pet.).

In the present case, the affidavit contains an address with a description of the building and the location of the apartment. The affidavit has a diagram attached which shows how to get to the apartment. The officer was questioned extensively about the accuracy of the diagram. He fully explained its meaning. The affidavit also contains a statement that the suspected party is being billed for utilities at the listed address. Even were the address of the individual apartment wrong, the description is enough for an officer to understand which individual apartment is to be searched. Subpoint A is overruled.

In Subpoint B, the Appellant asserts that the affidavit fails to state probable cause because it relies on an informant without further corroboration. The Appellant relies on *Stoddard v. State,* 475 S.W.2d 744 (Tex.Crim.App.1972) and *Dion v. State,* 456 S.W.2d 97 (Tex.Crim. App.1970). In *Dion,* the affidavit did not assert the underlying circumstances used by the informant in obtaining his information, nor was there any assertion of the reliability of the informant. No corroboration is needed when the underlying circumstances are shown in the affidavit. In this case, the affidavit states that the informant had seen narcotics in the Appellant's possession in the apartment within seventy-two hours and that the officer and informant had prior dealings which had proven true and accurate. *Aguilar, supra,* 378 U.S. at 728, 84 S.Ct. at 1514, 12 L.Ed.2d at 729; *Dion, supra* at 98. In *Stoddard,* the old two-prong test was used. The court found one part of the affidavit sufficient, but found that the second part failed to assert that the informant was credible and reliable. *Stoddard, supra* at 747–748. In the present case, the informant had been in the apartment within seventy-two hours, had seen cocaine in the Appellant's possession, was familiar with cocaine, had been used as an informant before and was found to be accurate and reliable by the police. Looking at the totality of the circumstances in the present case, there is a probability that narcotics would be found in that particular place and that the informant was reliable. That is all that is presently required to be shown. *Illinois v. Gates, supra.* The affidavit adequately alleged the underlying circumstances and gave a sufficient description of the place to be searched. Point of Error No. Four is overruled.

In summary, it was the State's burden to show that the money was derived from the sale, distribution or delivery of a controlled substance, by preponderance of the evidence, i.e., the greater weight of credible evidence, or in the language of *Valles, supra,* under the balance of probabilities, that the money was more probably than

not so derived. The Appellant does not complain that the trial court did not admit the evidence before it. And, in fact, Appellant's points acknowledge receipt of the evidence. The essence of Appellant's attack is an asserted illegality of the search warrant which produced the evidence. In that regard, we have minutely found in response to Point of Error No. Four that there was no invalidity in the search warrant. Therefore, an absence of a specific ruling on a motion or running objection concerning search and seizure, if error, is harmless.

Furthermore, in order to raise a question in an appellate court, the general rule is that the record must not only disclose that certain relief was sought, but also that the trial court made an adverse ruling thereon. A motion not acted upon furnishes no basis for a point of error. *Harris v. Thompson Buick, G.M.A.C., Inc.*, 601 S.W.2d 757, 758 (Tex.Civ.App.—Tyler 1980, no writ); *State v. Dikes*, 625 S.W.2d 18 (Tex.App.—San Antonio 1981, no writ).

The trial court here expressly received in evidence all of the State's proffered exhibits, including the Esquire article, at pages 180–181 of the statement of facts, with the exception of the money made the basis of the suit. That was received at page 186. The only qualification to the receipt of all of the evidence was the running suppression objection which we have already shown to be irrelevant. That the court considered the evidence so admitted is manifested by the court's letter to counsel of record in the transcript. Furthermore, in this regard, the judgment recites in part:

> [T]he court proceeded to hear testimony and considered numerous exhibits offered by both sides .... Having considered all of the evidence, exhibits ... finds ... Currency which is the subject of this suit, is subject to forfeiture....

 Finally, this was a bench-tried civil case and the court below was the sole judge of the credibility of the witnesses and the weight to be given their testimony. It is well established that if no findings of fact are requested, as here, every presump-

tion in favor of the trial court's judgment shall be indulged. Rules 298, 299, Tex.R. Civ.P; *Carter, supra; Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962); *Quinn v. Dupree*, 157 Tex. 441, 303 S.W.2d 769 (1957). Questions of fact are presumed found in support of the judgment. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977). The reviewing court must view all evidence in the light most favorable to the trial court's findings, disregarding all evidence to the contrary. *Quinn, supra*, 303 S.W.2d at 773.

The judgment is affirmed.

STEPHEN F. PRESLAR, Chief Justice, dissenting.

I respectfully dissent. The State has failed in several ways to meet its burden to sustain a judgment of forfeiture under the Controlled Substances Act, Tex.Rev.Civ. Stat.Ann. art. 4476–15 (Vernon Supp.1986), hereinafter the "Act."

I would sustain Appellant's Points of Error Nos. One, Two and Three; the State has not proved by a preponderance of the evidence that it is entitled to a judgment of forfeiture. Secondly, the Act specifies certain crimes for which forfeiture may occur and the evidence does not connect the currency with any such proscribed penal offense. In fact, it cannot in this case, because the offense with which the defendant is charged is not one of those specified in the Act. Thirdly, the record will not support a judgment of forfeiture because the evidence presented by the State was never ruled on by the court as being admissible, and the failure of the court to rule on the admissibility of the evidence is reversible error.

The State's case was based on items seized in the residence of the accused. When these items were offered in evidence, the defendant objected to their admission on the basis that the proffered evidence was obtained as a result of the execution of an insufficient search warrant, was therefore obtained illegally, and was inadmissible under the exclusionary rule. The exclusionary rule applies to forfeiture proceed-

ings. *One Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *Jonas v. City of Atlanta*, 647 F.2d 580 (5th Cir.1981); *Vance v. United States*, 676 F.2d 183 (5th Cir.1982); Tex. Code Crim.Pro.Ann., art. 38.23 (Vernon 1979). Its application to this case is not questioned. A motion to suppress was pending in another court in a criminal trial and the State argued that the court could not rule on the admissibility of the evidence in this civil case because of the pendency of the question in the criminal case. The trial court accepted that argument and maintained that position throughout the trial. There is no motion to suppress filed in this case; the majority seems to assume there is in upholding a waiver position. The defendant's verified answer denies the facts alleged in the search warrant, but there is no motion to suppress. The prayer in defendant's pleading was for relief on final hearing with no mention of any motion. The only motion involved is in the criminal trial. Because of the pendency of that motion, the court in this case took the position that it should not rule on the admissibility of the State's evidence. The court granted Appellant a standing objection to the evidence, and Appellant made additional objections to the State's evidence to the very end, but the court never ruled, except subject to the suppression motion. One thing is clear—if the evidence was admitted, it was on a conditional basis. The State takes the position that the court was correct in not ruling because there had not been a *Franks* motion as a prerequisite for going behind the search warrant. *Citing: Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This position is untenable because this is a civil suit controlled by the rules of civil procedure. It is elementary that the plaintiff in a civil case must prove his case and establish his entitlement to recovery and there is no burden on the defendant to do anything. Those elementary rules apply here, and the plaintiff, by not presenting admissible evidence and having it admitted under the court's ruling, has not made a case. The court has applied criminal rules to a civil

case at the urging of the plaintiff, and has been led into error which is charged to the plaintiff. Even under the criminal rule, Appellant would be entitled to a ruling, for Article 38.23 of the Code of Criminal Procedure (Texas statutory exclusionary rule), in providing that evidence obtained in violation of the statutes or Constitutions of the United States or State of Texas shall not be admitted, further provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Citing Article 38.23, Appellee urges that an adverse ruling must be obtained in order to preserve error and that Appellant has waived this ground of error. Not so. No such motion was required of the defendant in this civil case. Appellant did all he was required to do to preserve error as to the admissibility of the plaintiff's evidence by timely objecting to it on proper specific grounds. Because no motion to suppress was filed in this case, it therefore was not pending and could not be the subject of a waiver contention. Waiver is not involved as a matter of law. There is no waiver factually. Appellant made strenuous objections initially and throughout the trial, including the last offering that Appellee made of its total evidence. Also, the court gave Appellant a continuing objection from beginning to end. Appellee, and the majority, rely on six cases, for waiver. None are applicable here. *Mayfield v. State*, 649 S.W.2d 361 (Tex.App.—2nd Dist.1983, PDRR), has no application here. There the motion in limine of the State was granted and the defendant did not ever offer the evidence excluded by the motion. It was held that the error was not preserved. In *McMinn v. State*, 640 S.W.2d 86 (Tex.App.—Fort Worth 1982, PDRR), the defendant contended on appeal that the introduction of the tire plugging tool violated the court's order for discovery. However, the

proof was that no such order was ever entered. That has no application here. In *De La Garza v. State*, 650 S.W.2d 870 (Tex.App.—4th Dist.1983, PDRR), the holding was that a motion in limine alone is not sufficient to preserve error; that there must be an objection to the evidence when offered. *Marek v. Baylor County*, 430 S.W.2d 220, 222 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.), concerned a contention on appeal that the trial court erred in overruling the special exceptions. The record did not show that the exceptions were ever presented to the court for ruling. That has no application here. In *Hicks v. Fredericks*, 286 S.W.2d 315, 318 (Tex.Civ. App.—Beaumont 1955, no writ), the point on appeal, that the court erred in overruling the defendant's motion for a mistrial, was held to be no good where the record did not show that the motion was ever presented to the trial court. The parties also argue the application of the Fifth Circuit ruling in *U.S. v. Renteria*, 625 F.2d 1279 (5th Cir.1980). Citing Federal Rules of Criminal Procedure, the court there held that there must be a ruling on suppression matters. As has been seen, our Article 38.22 is very similar to the federal rule. However, it must be noted that those are criminal matters and would ordinarily have no application in this civil case, except by analogy. *Renteria* was based on Fourth Amendment rights involving the question of taking of property without due process of law, a matter present here. Under the Fourteenth Amendment, it is applicable to the State in a criminal trial.

The essence of the matter presented here is that the plaintiff did not make its case. It offered evidence, the admissibility of which was put in issue. The court never ruled on that question of admissibility, but left it to a case pending in another court—a criminal case involving a different criminal offense from the one relied on here. Hence, the evidence was not admitted, and in the absence of the evidence to establish the plaintiff's case, it must fail. The error becomes a glaring injustice when we look at the judgment arising out of this proceeding; what kind of a final judgment do we have in this civil case when it is contingent on a yet-to-be-heard motion, pending in yet another court in a criminal trial? What validity do we have when that court may, at a later date, declare inadmissible the evidence on which this judgment is based? If the evidence was conditionally admitted, then, at best, we have a "conditional judgment." No such creature exists in Texas law. We should strike it down here, in this Court.

In regard to Appellant's points of error on the sufficiency of the evidence, it appears there is no need to review the evidence because as a matter of law there can be no forfeiture here. That is so because the penal offense involved here is not one of those enumerated in the Act which permits forfeiture. The offense here is possession. The owner of the currency is charged only with possession, and under the Act, possession is not one of the enumerated offenses. Forfeiture exists in the United States only by virtue of statute. There is no common law forfeiture in Texas or the other states. Annot., 3 A.L.R.2d 740 (1949). In *State v. Richards*, 157 Tex. 166, 301 S.W.2d 597 (1957), our Supreme Court set out the fact that though the forfeiture case is a civil proceeding, it involves a penal offense, that is, one of those enumerated in the statute permitting forfeiture. Before there can be a forfeiture, one of the enumerated penal offenses must be established and a link must be shown between that offense and the object forfeited. *Henderson v. State*, 669 S.W.2d 385 (Tex. App.—4th Dist.1984, no pet.); *Bickers v. State*, 646 S.W.2d 668 (Tex.App.—5th Dist. 1983, no pet.); *Mosse v. State*, 332 S.W.2d 383 (Tex.Civ.App.—Dallas 1960, no writ). In *Henderson*, the court said:

> The issue is that the money found in appellant's pocket derived from a violation of the Act and required proof, either by direct or circumstantial evidence, of a connection or a link between that money and the offense. A police officer witnessing a sale or delivery of controlled

substances and an exchange of money is such an example.

The court then held:

> While the circumstantial evidence in this case may make it more likely than not that defendant had been trafficking in controlled substances, on the other hand, it fails to raise even a surmise linking the $903.00 with the violation of the Controlled Substances Act.

So it is in the case before us. There is no evidence linking the money with a violation of the Controlled Substances Act. In fact, as noted, no one has been charged with a violation of the Act. That makes this case like the *Bickers* case, *supra*. There the defendant was charged with transporting cocaine and forfeiture of his Mercedes automobile was sought by the State. Prior to the forfeiture trial, he plea-bargained for a guilty plea of possession. The Dallas Court of Appeals reversed the forfeiture judgment because the plea bargain agreement and conviction for unlawful possession "failed to establish the essential ground warranting forfeiture of the Mercedes, *i.e.*, its *transport* of contraband cocaine for delivery." The forfeiture judgment in the case before us cannot stand for the same reason; possession is not an enumerated penal offense under the Act.

The constitutional issues arising in civil forfeiture cases under the Act are discussed in *State v. Richards, supra*, and make it obvious that the forfeitures which meet constitutional muster are those enumerated in the Act. That must mean that there can be no forfeiture where, as here, there is no charge of one of the enumerated violations.

Although under my view there is no need to discuss the evidence points, the majority has written on them and my views need to be added since I disagree with the majority. Appellant has two assignments of error as to the lack of evidence to support the forfeiture judgment. The State briefs only one of them. In reviewing them, we note that the proof must be by a preponderance of the evidence. The Act itself provides by Section 5.07(b) that if the owner has filed a verified answer denying that the property is subject to forfeiture, as was done in this case, then the burden is on the State to prove by a preponderance of the evidence that the property is subject to forfeiture. Preponderance of the evidence is also the case law holding. *See: Henderson, supra; One 1984 Ford v. State,* 698 S.W.2d 279 (Tex.App.—2nd Dist.1985, no writ). All of the evidence in this case which the State relies on is circumstantial. To establish a fact by circumstantial evidence, the circumstances relied upon must have probative force sufficient to constitute a basis of legal inference. It is not enough that they raise a mere surmise or suspicion of existence of fact or permit purely speculative conclusion. *Lumbermen's Underwriting Alliance v. Bell,* 594 S.W.2d 569 (Tex.Civ. App.—Tyler 1980, ref'd n.r.e.); *Transport Insurance Company v. Campbell,* 582 S.W.2d 173 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The plaintiff relies on *Valles v. State,* 646 S.W.2d 636 (Tex.App.—Houston [1st Dist.] 1983, no writ), for its position that the burden of proof was that under the circumstances raised by the evidence it was more reasonably probable than not that the recovered money was derived from the sale of controlled substances. *Valles* cannot be read to set a standard less than a preponderance of the evidence. The statement that the test is more probably than not is attributed to *Freeman v. Texas Compensation Insurance Co.,* 586 S.W.2d 172 (Tex.Civ.App. —Fort Worth 1979), *affirmed as modified,* 603 S.W.2d 186 (1980), and that is not the holding of that case. It is a worker's compensation case dealing with presumptions of the worker being on the job at the time of death. Also, a reading of *Valles* shows that it was, in fact, decided on the basis of a preponderance of the evidence. The standard of proof is the same for circumstantial evidence as direct evidence. *Freeman, supra.*

The proposition to be proved by a preponderance of the evidence under the State's pleading is that the "currency was derived from the sale, or distribution or delivery"

of cocaine. Nothing more than that is involved, as that is the sole basis pled for forfeiture, and we are concerned only with evidence concerning sale, distribution or delivery. There is no contention or argument as to "distribution" or "delivery" or evidence on either of those things, so they are out. So, our sole concern is with "sale." As to that, the State argued in the trial court, and in this Court, that the cash was not necessarily the direct proceeds of the sale, but rather that it was "derived" from the sale "and derived is not defined in the act." "[N]owhere in our pleadings does it indicate all or some or any part of this money is particularly related to the sale of cocaine." That raises the question: if the money was not derived by sale, how was it derived? And in that connection we note that a finding that "the money was derived" would not settle anything under the Act and permit forfeiture. Derived is not a penal offense under the Act, or otherwise, standing alone.

In its brief, the State argues for sufficiency of proof by saying that the quantity of drugs, the type of paraphernalia and an article on how to launder money, coupled with the presence of $56,700.00 in $100.00 bills, is sufficient circumstantial evidence to prove by a preponderance of the evidence that the $56,700.00 was linked to the sale, distribution or delivery of a controlled substance. The quantity of cocaine, not counting its additives, was some three-fourths of one ounce. Whether this would be considered a small or large quantity is of no consequence because it has no bearing on the question of whether it was for sale or not. *Amrani-Khaldi v. State*, 575 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1978, no writ), holds that the sheer quantity involved does not provide an inference that the drug was being transported for delivery. As to the State's contention that the type of the paraphernalia has any bearing on sales, it is obvious that all the cocaine instruments were for preparing it for use—to measure it into dosage by the scales, to mix it/blend it by the grinders, to portion it out by the other items, and to sniff it by the tubes involved. All of those items are consistent with use and not sale. Obviously it could be sold in most any form, either in its pure form, or blended. As to some article on how to launder money, the State commits egregious error in arguing that, because there is no such evidence. A single question was asked by the assistant district attorney if such an article was in an Esquire magazine found in the residence; objection was promptly made and promptly sustained and the question was withdrawn by the assistant district attorney. The fact of this money coming from sales is simply not established by the evidence. Although an ultimate fact may be shown by wholly circumstantial evidence, if the circumstances relied on are equally consistent with the evidence of non-existence of the ultimate fact sought to be established they do not constitute evidence of that fact. *Lopez v. Hernandez*, 595 S.W.2d 180 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Transport Insurance Company, supra*. The paraphernalia involved here is more likely to be for personal use than for sales of cocaine. The evidence indicates that it is not too different from a personal bar where one mixes different mixtures with alcohol, measures out the quantities with shot glasses and serves it up in different kinds and sizes of glasses for different drinks. The equipment used in this drug mixing-for-use is not unlike the equipment used for mixing drinks, yet we are prejudiced by the drug paraphernalia. Our abhorrence of the one drug and our acceptance of the other does not transform use to sale. Resolving the question of whether the items in evidence here are for use or sale is merely a guess, and it's a guess against the facts to select sale because there is no evidence of any kind about any sale—none. There is no evidence of the owner ever before, in any way, being connected with the drug business or sales. To the contrary, he is a respected, highly successful architect. One of his buildings is that of the Border Tobacco Company, located one block from the Courthouse, as to which we can take judicial notice that it is an outstanding example

of architectural work. The amount of money involved is nothing compared to the projects which the witnesses testified that this architect had worked on and was working on. Involved here was the construction of a night club and the remodeling of a hotel. There was evidence that he had built some twelve or fifteen buildings during a period of over twenty years for one of the witnesses, one being a candy factory; that he had built the Cliff Medical Center, and had been the architect for the City of El Paso. The two principal witnesses for the State testified there had not been any purchases of drugs from Harry Farah by any of their agents. The plaintiff's principal witness also testified that the residence that was later searched was under surveillance for thirty days and nothing suspicious was noted. The circumstances relied upon here simply do not have probative force sufficient to constitute a basis of legal inference that the currency involved was derived from the sale of cocaine. There is no fact from which a circumstance can be inferred. Before there can be an inference drawn in a circumstantial evidence matter, there must be a fact giving rise to it. That very elementary rule is ignored here by the majority. Not one fact about sales is mentioned—even the State does not contend there is evidence of sales—witness its argument in both the trial court and this Court that it does not so contend. It makes this argument because it cannot point to any evidence of sales in the record of this trial. The majority opinion also avoids the critical question of evidence of sales in passing on the points of error raising it. The owner of the money had no duty to prove anything, but doubts are dispelled by his plausible explanation of the source of the money. Long-time El Paso merchants testified to their requirement of payment in American dollars; that they did not extend credit to residents of Mexico, accept checks on Mexican banks, or take payment in pesos. They were due the money here involved and trusted Farah to collect it for them in dollars. He was not the buyer or seller, but simply the architect who recommended use of the items which

in turn were bought by his clients from the American merchants through his order. Because I can find no evidence in the record, and most certainly no preponderance thereof, that the currency found in this man's "castle," his home, is derived from the sale of a controlled substance, I cannot agree to the overruling of the points of error thereon. Citation of the rules will not pass for evidence or be beneficial in this instance; the case presents a single, simple proposition regarding the evidence to sustain a finding that the currency was derived from the sales of cocaine. In determining that question, it makes no difference that the court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, that if no findings of fact are made it is presumed all facts necessary to support the judgment were found, and that certain rules are followed in determining no evidence and insufficient evidence points of error. We can admit that, in support of its judgment, the court found the issue of sales against the Appellant, but there has to be some evidence of sales before we reach an issue of the credibility of the witnesses thereof; and there must be some evidence of sales before the reviewing court can view that evidence in any particular light. Application of the rule on the credibility of the witnesses and the weight to be given their testimony in this case would result in: no-person's testimony of sales versus long-time businessmen of El Paso as to the source of the money. Preponderance of the evidence on that issue comes down to speculation of sales versus direct evidence from the merchants. The ruling is that every element of the plaintiff's case is established by a preponderance of the evidence when speculation is balanced against direct evidence. I cannot agree. We cannot use those rules to deny Appellant an answer to his question of what evidence justifies the confiscation of his property. Citation of evidence that is not pertinent to the issue does not suffice either. If there is evidence of sales, it should be pointed out so that it can be evaluated and weighed openly. The Act which permits the confis-

cation requires a preponderance; that means that the evidence must preponderate on each and every element of the case for forfeiture. The standard of proof required is the same for circumstantial as for direct evidence. *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim.App.1983). Due process under both the United States and Texas Constitutions requires that the property to be forfeited was used in an illegal manner. Money is derivative contraband; its possession, without more, is legal, as distinguished from contraband per se. *See: One Plymouth Sedan, supra.* Only the criminal offenses listed in the Act will meet that test and permit the confiscation of property.

As has been discussed earlier, confiscation occurred in this case without the trial court ever ruling on the admissibility of the evidence offered to justify it. The failure to rule is error that cannot be explained away or denominated harmless.

When Appellant objected to the evidence offered by the State, he was entitled to either have it admitted or rejected in order to protect his rights; that he is entitled to some ruling in order to be able to show the error of the court's ruling is elementary. If it was admitted, he is in a position to assign error. Rule 103, Tex.R.Evid. It is obvious that he cannot be denied that right by the refusal of the court to rule; and the error is compounded when this Court upholds some kind of conditional ruling that the evidence may or may not become admissible *after judgment* is rendered, depending on what happens in another court in another trial, and that based on criminal law applied to this civil case. It cannot be labeled "harmless error" when the entire case hinges on its admissibility and a final judgment is entered. As to that judgment, Appellant's rights are forever lost regardless of how the other court rules, if it ever does; for there is no guarantee the trial will ever occur. And the only place that final judgment can be corrected is here in this appeal.

As has been discussed, the failure of the court to rule means the evidence was not admitted and no case was made. Reversal and rendition is mandated.

There has been no waiver. A proper ground of objection was made from beginning to end—the exclusionary rule. Neither the clarity and validity of the objection nor the application of that rule are challenged. There were clear objections to the evidence, not to be confused with the urging of some motion. The error assigned in this Court is also clear on that point. It is:

## III.

WHETHER ALTERNATIVELY, THE TRIAL COURT ERRED IN RECEIVING THE STATE'S EVIDENCE WITHOUT RULING ON THE APPELLANT'S OBJECTION TO THE SEARCH AND SEIZURE BASED ON THE FEDERAL AND STATE CONSTITUTIONS. (Emphasis added).

The error has not been made harmless by this Court now deciding that the search warrant was valid. That was never decided in the trial court. The court held throughout that it could not rule on it. As has been seen, the State as plaintiff in this civil case has the burden of proof; defendant had no obligation to prove anything, search warrant or otherwise. Evidence was offered and he objected to it, giving a valid reason. He has preserved his error on admissibility of the evidence. Also, the court refused to allow the defendant to attack the warrant; and it ruled that the validity of the warrant was not before the court, but was a matter pending in another court. The record is clear that the Appellant was not allowed to put the validity of the search warrant in issue. The court was positive in its position that "that is not before this court" and had no place in the hearing. Appellant was limited by the court to questioning the application of what is shown "on the face" of the warrant, but prohibited from asking questions which went to the verity of what was shown on the face. How can this Court rule on the validity of a matter still pending in another trial court? The issue was not tried and cannot pend before this Court on appeal. The State, with the burden of proof, argued throughout that it was not before the court. The trial court reiterated in its let-

ter to the lawyers, announcing its judgment, that the matter still pends in the other court. The grievous error here is that judgment has been entered as a final judgment. If this Court does not act on it, it remains final. It can never be changed. There is no procedure to change it when the other court rules on the search warrant in the criminal trial. Even if it turns out that the evidence in this case was not admissible, this judgment stands—based on it!

The judgment should be reversed.

## MOTION FOR REHEARING

I respectfully dissent and would grant the motion for rehearing and reverse and render for the reasons stated in my dissenting opinion and for the further reason that since our original opinion the Supreme Court has construed the forfeiture provisions of the Controlled Substances Act to be contrary to our majority opinion.

In *One 1980 Pontiac VIN # 2D19SAP21357 and Two Bags of Marihuana v. The State of Texas*, 707 S.W.2d 881 (Tex.1986), the Court held that a change of possession of a controlled substance would not permit forfeiture. That holding is dispositive of this case and requires its reversal.