**Michael G. BARRON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 3–87–010–CV.**

Court of Appeals of Texas,
Austin.

March 2, 1988.

Eddie G. Shell, Shell & Shell, Burnet, for appellant.

Jay Floyd, Llano, for appellee.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

BRADY, Justice.

Appellant Michael G. Barron, seeks to set aside the trial-court's judgment of forfeiture of certain property including $4,993.50 in United States currency, one 1983 Chevrolet Z-28 Camaro automobile, and various items of personal property. Barron forfeited the property to the Sheriff's Department of Burnet County pursuant to Tex.Rev.Civ.Stat.Ann. art. 4476-15 (1987). We will reverse the trial-court judgment in part and affirm it in part.

At approximately 1:00 a.m. on the morning of June 26, 1986, acting pursuant to a search warrant, fifteen to twenty officers from the Burnet County Sheriff's Department and the Greater Austin Organized Crime Unit "secured" and entered a house in Bertram, Texas. No one was present in the home at the time the warrant was executed.

While en route to the house, a contingent of the officers, who had been advised to watch for a black Camaro with a mobile telephone antennae on its top, spotted the vehicle at a car wash and arrested the occupants: appellant and another individual. Inside the car the officers found a ledger and a hypodermic needle. On appellant's person, the officers found $198 in United States currency. Appellant was taken by the police to the house where the search was being conducted.

A pickup truck and a three-wheel all-terrain vehicle were parked outside the house. Inside the house the officers found what appeared to be a fully operating methamphetamine lab. Parts of the lab and paraphernalia normally associated with a methamphetamine lab were found throughout the house, including beakers, glassware, and large jars full of liquid and powdered substances later identified to be methamphetamine and chemicals used for its manufacture. The strong smell of ether permeated the house.

The officers also found two 9MM automatic weapons and a 30-30 rifle. In a bedroom of the house officers found a safe. Appellant gave the officers the combination and inside the safe the officers found a quantity of methamphetamine and $4600 in United States currency. Officers also found $185.50 in a jug in the master-bedroom closet. The officers seized the methamphetamine lab, lab paraphernalia, the money, chemicals, and methamphetamine. In addition, the officers seized the guns, stereo equipment, electronic equipment, tools, the three-wheel all-terrain vehicle (hereinafter, collectively referred to as the "personal property") and the black Camaro.

Notice of Seizure and Intended Forfeiture of all of the seized property was sent to Michael G. Barron. Additionally, notice of the intended forfeiture of the Camaro was sent to its record owner, Larry D. Ingram, who failed to answer. A trial was held in the 33rd District Court of Burnet County and all of the property seized was forfeited to the Burnet County Sheriff's Department.

In his sole point of error, appellant argues that the trial-court erred in forfeiting the property to the Burnet County Sheriff's Department because there was no evidence or insufficient evidence to link any of the property as being derived in violation of Tex.Rev.Civ.Stat.Ann. art. 4476-15, § 5.03(a)(5) or (6) (1987) (Hereinafter The Act).

Where there are no findings of fact in an appeal from a trial to the court, the reviewing court must affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). The appellate court will imply all necessary fact findings in support of the judgment. *Id.* In reviewing the record to determine if there is any evidence supporting the judgment and its implied findings, it is proper to consider only the evidence favorable to the issue and to disregard all evidence or inferences to the contrary. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex.1979). In reviewing an insufficiency of the evidence point, the court must examine all of the evidence and may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W. 2d 175, 176 (Tex.1986).

We turn first to the State's contention that Barron lacks standing to press this appeal.

## I. STANDING

The State maintains that since Barron is not the record owner of the car and has never acknowledged an ownership interest in any of the other property seized, he has no personal or ownership interest in the forfeited property and, therefore, no justiciable interest in the subject matter of this action. We do not entirely agree.

■ A. *The Car.* The record indicates the Camaro is not the property of appellant. The record owner, Larry Ingram, failed to appear or answer and wholly defaulted. The State introduced into evidence the notice of seizure and intended forfeiture. This established a *prima facie* case that the car was subject to forfeiture. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 5.07(b) (1987). Ingram did not appear and did not rebut the State's evidence. Judgment of forfeiture of the vehicle was rendered against Ingram. Therefore, the State may now, on appeal, challenge appellant's standing to attack that part of the judgment.

■ For a party to maintain an action in court, he must show a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity. *Yett v. Cook*, 281 S.W. 837, 841 (Tex.1926); *Manson v. State*, 609 S.W.2d 855, 856 (Tex. Civ.App.1980, no writ); *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973). Appellant was merely in possession of the automobile at the time of his arrest. In his answer and at trial, appellant claimed no interest in the vehicle, nor is there any evidence in the record to demonstrate a proprietary or ownership interest in the car. Appellant has no standing to attack that part of the judgment forfeiting the Camaro.

■ B. *The Money and Personal Property.* The State, in its own pleadings, alleged that appellant is the owner of the property seized at Route 2, Box 38A, Bertram, Texas. Further, the State alleged that appellant resided at that address. While it is true that the defendant's answer contained a general denial, which may be construed to negate every fact averred in the State's pleadings, the evidence in the record is sufficient to establish that the property located at the house and seized by the officers is that of appellant.

Appellant communicated to the police the combination to the safe located in the master bedroom; in his motion for new trial, he referred to the property seized as his personal property; the State sent the notice of seizure and forfeiture of the property to appellant; and neither the State nor appellant had ever alleged that someone else is the true owner. The evidence is sufficient to find the appellant to be the owner of the property found at the house. Finally, a party's lack of a justiciable interest must be pointed out to the trial court in a written plea in abatement and a ruling thereon must be obtained or the matter is waived. *Texas Indus. Traffic League v. Railroad Com'n.*, 633 S.W.2d 821, 823 (Tex.1982). The State failed to file any such motion.

We hold that appellant has standing to attack that part of the judgment forfeiting the money and personal property seized at

the house and the money found on appellant at the time of his arrest.

## II. STATUTORY BASIS FOR FORFEITURE

A. *Burden of Proof.* In a circumstantial evidence case, before property can be seized, the State must show that the property was more probably than not derived from the sale, manufacture, distribution, dispensation, delivery, or other commercial undertaking violative of the Act. *See Valles v. State,* 646 S.W.2d 636, 638 (Tex. App.1983, no writ). The State must show more than mere surmise or suspicion. *Valles v. State,* 646 S.W.2d at 638.

B. *Statutory Construction.* As a rule, forfeiture statutes will be strictly construed. *Cox v. Payne,* 174 S.W. 817, 819 (Tex.1915). A forfeiture statute should be read in such a way as to effectuate the intent of the Legislature while at the same time, if reasonably possible, to prevent rather than cause a forfeiture. *Sheppard v. Avery,* 89 Tex. 301, 34 S.W. 440, 442 (1896).

C. *The Relevant Statutory Provisions.* The relevant provisions of art. 4476–15 are:

Sec. 5.03(a)  The following are subject to forfeiture as authorized by this subchapter:

(6) *all money,* certificates of deposit, negotiable instruments, securities, stocks, bonds, businesses *or* business investments, contractual rights, real estate, *personal property,* or other things of value *used or intended for use* in violation of Section 4.052 of this Act or *derived from the sale, manufacture, distribution, dispensation, delivery, or other commercial undertaking violative of this Act;* ....

(emphasis added).

We will now turn to the application of the forfeiture provisions of art. 4476–15, § 5.03(a)(6) to the facts of this case.

## III. FORFEITURE OF THE MONEY

A. *The Money In The Safe.* Four thousand six hundred dollars in United States currency was found in a safe in the master

bedroom that the officers searched. Inside the safe, lying beside the money, was a quantity of methamphetamine in a plastic container. The question before this Court is whether the State proved by a preponderance of the evidence that the money was derived from the sale, manufacture, distribution, dispensation, delivery or other undertaking in violation of The Act.

We conclude that there is sufficient circumstantial evidence to find the money was derived from the sale of methamphetamine. While no one witnessed appellant selling methamphetamine or exchanging money for methamphetamine, the money was found in a locked safe with methamphetamine beside it, inside a house containing a methamphetamine lab. The lab itself extended throughout the house and was in full operation, producing quantities of the drug in amounts too great to be reserved for appellant's personal use.

Additionally, there is evidence appellant had been unemployed for several months. While the exact length of unemployment is unknown, it is reasonable to infer that the quantity of money found in the safe was more probably than not the proceeds from one or more drug transactions involving the sale of the methamphetamine being manufactured in the house. We find sufficient evidence to support the forfeiture of the $4,600 to the Burnet County Sheriff's Department.

B. *The Money In The Jug In The Bedroom Closet.* The officers found $185.50 in a jug in the master bedroom closet of the house. There were no drugs in the jug or in the closet.

For the same reasons relied upon to forfeit the money found in the safe, we hold the circumstantial evidence sufficient to support a finding that the money found in the closet was proceeds from the sale of the methamphetamine being produced in the house. We find the evidence sufficient to support the forfeiture of the $185.50.

C. *The 'Personal Property' Seized From The House.* The officers seized from appellant's residence guns, stereo equipment, other electronic equipment, as-

sorted tools, and a three-wheel all-terrain vehicle. The State argues this personal property was derived from the sale, manufacture, distribution, dispensation, delivery or other commercial undertaking in violation of § 5.03(a)(6) of The Act. The State bases this assertion on the presence of this property in the house containing the methamphetamine lab and on the fact that appellant was unemployed, the inference being he had no legal source of income with which to purchase the property.

The argument the State proffers requires this Court to subscribe to a theory whereby the appellant first sold methamphetamine for money, then used *only* the proceeds from the illegal sales to purchase each and every item seized by the officers. The State adopts this position while admitting it has no personal knowledge on which to base this argument.

■ The testimony of Mr. Manley, an investigator with the Burnet County Sheriff's Department, reveals that appellant could have owned these items for at least ten years. There was no investigation of appellant's financial history or income tax returns to determine when appellant had last been employed or whether he had possessed other sources of legally derived income with which to purchase the personal property seized. Further, unlike large amounts of cash, the items seized are typically found in most households.

The link the State would have this Court infer is too attenuated. This Court finds the State's argument to be no more than mere surmise or conjecture. The State has failed to meet its burden, for the evidence does not show that it is more probable than not that the property seized was derived from a violation of § 5.03(a)(6) of The Act.

We reverse that part of the trial-court's judgment forfeiting the guns, stereo equipment, other electronic equipment, three-wheel all-terrain vehicle, tools and tool box.

D. *The Money Found On Appellant When Arrested.* Appellant was arrested at a car wash by a contingent of Burnet County Sheriff's Department officers who were en route to serve the search warrant at Route 2, Box 38A, in Bertram, Texas.

At the time of his arrest, appellant was in possession of a black Camaro, whose record owner is Larry D. Ingram. Upon arresting appellant, the officers searched the Camaro and found a ledger containing names, telephone numbers, and notations in ounces and dollar figures. The officers also found a hypodermic needle inside the car, which was later tested and showed no trace of drugs. On appellant's person, the officers found $198. There were no drugs found on appellant or in the car. The State ultimately seized both the money found on appellant and the Camaro and the trial court later granted the State's request for forfeiture of these items. To uphold the forfeiture of the $198 found on appellant, the State must show the money was derived, used or intended for use in violation of The Act. Although the ledger and hypodermic needle were found in the car, their presence in the vehicle is not evidence of how appellant obtained or intended to use the money.

■ While the circumstantial evidence in this case makes it more probable than not that the appellant had been manufacturing and selling methamphetamine at his home, it fails to raise more than mere surmise or suspicion that the $198 found on appellant at the car wash was obtained in violation of the Controlled Substances Act. *Henderson v. State,* 669 S.W.2d 385, 388 (Tex.App.1984, no writ). We concede the appellant's unemployment casts the same shadow on the $198 that is cast on the money found at the house. However, the absence of a direct link between the $198 and a violation of The Act cannot be buttressed here, where no violation of The Act is in evidence, as it was buttressed at the house, where the operating methamphetamine lab and large quantities of methamphetamine provided the circumstantial evidence necessary to support the inference that the money found at the house was more probably than not the result of a sale in violation of The Act. The money found on appellant at the time of arrest is not subject to forfeiture.

We reverse that part of the trial-court's judgment forfeiting the 'personal property'

found at appellant's home, and the money on his person at the time of arrest. We affirm that part of the trial court's judgment forfeiting all money found inside the appellant's residence containing the methamphetamine lab and the Camaro automobile.