

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00226-CV

$214.00 U.S. CURRENCY, 1995                                      APPELLANT
CHEVROLET, AND FIREARM WITH
AMMUNITION

V.

THE STATE OF TEXAS                                               APPELLEE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. S-11299

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Rhonald Martinez, appearing pro se, appeals the seizure of his

property pursuant to chapter 59 of the Texas Code of Criminal Procedure.  *See*

Tex. Code Crim. Proc. Ann. arts. 59.01–.14 (West 2006 & Supp. 2014).  In two

---

[1]*See* Tex. R. App. P. 47.4.

issues, Martinez argues that the evidence is legally and factually insufficient to show that the $214.00 in U.S. currency and the alleged firearm with ammunition are contraband and that the search during which the property was seized was the result of an invalid traffic stop.  Because we hold that the evidence is legally insufficient to support the forfeiture of the $214.00 in U.S. currency and the alleged firearm with ammunition, we will reverse and render that portion of the trial court's judgment; we affirm the portion of the trial court's judgment forfeiting the 1995 Chevrolet to the State.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Officer Cade testified at the forfeiture trial that on September 1, 2011, he performed a traffic stop on a 1995 Chevrolet due to two violations of the Texas Transportation Code:  an expired registration and a nonworking license plate light.  The traffic stop occurred late at night in "a high crime and drug-activity area."  Martinez was the driver and the only occupant of the vehicle.

When Officer Cade began approaching the vehicle, Martinez attempted to roll down the window.  As Officer Cade drew closer to the vehicle, Martinez rolled up the window and attempted to exit the vehicle.  Officer Cade told Martinez to sit back down in the vehicle and to roll down his window.  Martinez initially responded that his window could not be rolled down, but when Officer Cade asked him a second time to roll down the window, Martinez complied.  Officer Cade asked Martinez for his driver's license and proof of insurance, and Martinez

2

provided his driver's license.[2]  Due to Martinez's actions in initially attempting to exit the vehicle, rolling down the window, rolling it back up, and then claiming it would not roll down, Officer Cade was "very suspicious."  Officer Cade testified that he was afraid that Martinez had a weapon, so he asked Martinez to step out of the vehicle and called for an assist officer.  Officer Cade asked Martinez for verbal consent to search his body and his vehicle, Martinez gave his consent, and Officer Cade searched Martinez's pockets.

When Officer Curtis arrived, Officer Cade asked him to stand with Martinez at the back of Martinez's vehicle.  Officer Cade attempted to search the vehicle, but Martinez had locked the doors to the vehicle and had left the keys in the ignition.  Officer Cade asked Martinez if he had a spare key, and he replied that he did not.  Officer Cade testified, "It was very suspicious what he was doing. Based on my training, experience, he was attempting to distance himself from some sort of contraband.  I believe[d] that he had something in the vehicle." Officer Cade testified that Martinez appeared nervous:  his hands were shaking, and he was sweating profusely.[3]  Martinez then withdrew his consent to the search of the vehicle, which Officer Cade considered suspicious.

---

[2]Officer Cade could not remember whether Martinez also provided proof of insurance.

[3]Officer Cade said that it was September in Texas and that Martinez could have been sweating for other reasons, but this seemed "a bit [] beyond."

3

Officer Cade placed Martinez in Officer Cade's vehicle for his safety and for Martinez's safety; Martinez was detained without handcuffs and was not under arrest. Officer Cade called for a canine officer.

The canine unit arrived quickly and alerted on Martinez's vehicle, and another officer was able to gain entry into Martinez's vehicle. Officer Cade searched the vehicle and found what he believed to be methamphetamine under the driver's seat; a green bag in the glove compartment that looked like a kids' pencil case, containing baggies of methamphetamine and baggies of marijuana; and a syringe. Officer Cade testified that the total amount of methamphetamine found was approximately eight grams[4] and that based on his training, this was a dealer amount.

Officer Cade seized the vehicle under chapter 59 because he believed that it was used or there was an attempt to use it in the commission of a felony. Officer Cade also seized the $214.00 in cash that he found in Martinez's wallet because he believed that under chapter 59, it was proceeds of a felony. Officer Cade testified that he also found a firearm in the vehicle and that he seized the firearm. The firearm was later discovered to not be a firearm under the definition in the penal code.

---

[4]The State admitted into evidence a copy of the laboratory analysis of the substances recovered from the vehicle: one plastic bag contained 6.89 grams methamphetamine; four plastic bags contained a total of 1.17 grams methamphetamine; two plastic bags contained a total of 2.99 grams of marijuana; and one plastic bag contained 0.25 grams of marijuana.

Martinez, who also proceeded pro se in the trial court, participated in the trial by telephone. Martinez asked Officer Cade on cross examination about the conversation the two had at the scene regarding whom Martinez had said owned the car. Officer Cade said that he did not remember the conversation.[5] In response to Martinez's questioning, Officer Cade testified that Martinez was not under arrest when he was moved to the patrol car and that he had placed Martinez under arrest only after he found narcotics inside the vehicle. Martinez asked Officer Cade whether there was a videotape of the stop or a written consent to search form, and Officer Cade said that the videotape was never tagged as evidence and there was no written consent form.[6]

Detective Rhodes, the handler for canine Z, testified that he walked Z around the vehicle that Martinez had been driving on September 1, 2011, and that Z performed a "free-air sniff" in close proximity to the exterior of the vehicle. Detective Rhodes testified that Z alerted to the driver's side door. Detective Rhodes further testified that because Z had been trained as a bite dog, the vehicle's occupants were not allowed near the vehicle during Z's "free-air sniff" for fear of an accidental bite.

---

[5]The forfeiture trial occurred on July 14, 2014, which was almost three years after the traffic stop had taken place.

[6]Officer Cade testified on redirect that his patrol car was outfitted with a video recorder in 2011, that the video recorder was on, that he did not have a body microphone, and that it was not their practice to tag as evidence every videotape from every traffic stop.

Martinez cross-examined Detective Rhodes about why he did not call a magistrate to request a search warrant, and Detective Rhodes responded, "Because a dog alerting to the odor of illegal narcotics emitting from a vehicle is immediate probable cause to search that vehicle bumper to bumper."

During his case in chief, Martinez informed the trial court that he had filed a motion for summary judgment and had attached as evidence bank records showing that he had deposited his supplemental income check from the government and had withdrawn those funds a few hours before his arrest. The trial court took judicial notice of the bank statement.[7]

After hearing the above testimony, the trial court granted forfeiture of the $214.00 in cash, the 1995 Chevrolet,[8] and its contents—which included the purported firearm with its ammunition—to the State. Martinez then perfected this appeal.[9]

---

[7]The document attached to Martinez's motion for summary judgment consists of a two-page printout, reflecting that a deposit in the amount of $674 was made by "SSI Treas" on September 1, 2011, and that two withdrawals for $122.50 each were made after the deposit on the same date.

[8]The trial court noted that Martinez had denied ownership of the vehicle and that the owner of the vehicle had filed a waiver with the court.

[9]Martinez also appealed the underlying conviction for possession with intent to deliver between four and 200 grams of methamphetamine, which this court recently affirmed. *See Martinez v. State*, 02-13-00610-CR, 2015 WL 392729, at *7 (Tex. App.—Fort Worth Jan. 29, 2015, pet. filed) (mem. op., not designated for publication).

### III. Reasonable Suspicion for Continued Detention

In his second issue, Martinez argues that the search performed during the traffic stop was not valid. Martinez does not contest Officer Cade's initial traffic stop based on the vehicle's expired registration and nonworking license plate light. Martinez does, however, contest Officer Cade's continued detention of him after the initial traffic stop.[10]

If, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *Davis v. State*, 947 S.W.2d 240, 243–44 (Tex. Crim. App. 1997); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). A police officer has reasonable suspicion when he possess "specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 132 S. Ct. 150 (2011); *accord Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). These facts must add up to more than a mere inarticulate hunch, suspicion, or good faith belief that a crime was in progress. *Crain*, 315 S.W.3d at 52. This is an objective standard that looks to the totality of the circumstances and disregards the subjective intent of the detaining officers. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

---

[10]We note that Martinez does not independently challenge the reasonableness of the length of the detention.

7

"[C]ircumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves. Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be." *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The facts must give rise to reasonable suspicion that "something of an apparently criminal nature is brewing" but need not show "that the detainee has committed, is committing, or is about to commit . . . a particular and distinctively identifiable penal offense." *Derichsweiler*, 348 S.W.3d at 916–17.

Here, several facts led Officer Cade to suspect that Martinez had engaged in criminal activity apart from the traffic violations and thus allowed Officer Cade to prolong the detention of Martinez until the canine unit arrived. Officer Cade saw Martinez behave erratically and furtively; upon Officer Cade's approach, Martinez rolled down his driver's side window, rolled it back up, began to get out of his car to meet Officer Cade, apparently misrepresented to Officer Cade the window's ability to function, and rolled it down again. Martinez then showed signs of nervousness, including shaking hands and sweating profusely. Martinez also acted in a way that signaled that he might be hiding something: after granting consent for Officer Cade to search the car, he prevented Officer Cade from doing so by locking the car with its keys in the ignition and then withdrew his consent to the search of his car. Furthermore, all of these actions occurred late at night in a "high crime and drug-activity area."

8

None of these factors, when viewed individually, would necessarily generate reasonable suspicion of criminal activity. But we conclude that when viewed collectively, these factors constitute sufficient specific and articulable facts, in light of Officer Cade's experience and personal knowledge and when coupled with reasonable inferences therefrom, to reasonably warrant Officer Cade's continued detention of Martinez. *See Matthews v. State*, 431 S.W.3d 596, 603–04 (Tex. Crim. App. 2014).[11] Accordingly, we overrule Martinez's second issue.

## IV. SEIZURE AND FORFEITURE OF PROPERTY

In his first issue, Martinez argues that the evidence is legally and factually insufficient to show probable cause for seizing the property or that the seized property is contraband and therefore subject to forfeiture. Martinez limits his argument to the forfeiture of the $214.00 in cash and the contents of the vehicle, which we construe to be the alleged firearm with ammunition;[12] he does not challenge the forfeiture of the 1995 Chevrolet.

---

[11]Within his second issue, Martinez also argues that the trial court erred by omitting crucial evidence—the audio tape and videotape—that he had requested and that the State of Texas "knew of these tapes and concealed them from the criminal trial in this matter which violates the Michael Morton Act." Based on Officer Cade's testimony at trial that there was no audio recording of the incident and that videotapes of traffic stops were not routinely tagged as evidence, the record does not support Martinez's argument.

[12]To the extent that Martinez argues that there was other "unlisted property" in the vehicle, the record before us does not support his argument.

9

## A.  Standard of Review

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Wood v. Tex. Dep't of Pub. Safety*, 331 S.W.3d 78, 79 (Tex. App.—Fort Worth 2010, no pet.).  When a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues.  *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.).  When such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact.  *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Liberty Mut. Ins. Co.*, 295 S.W.3d at 777.  The judgment must be affirmed if it can be upheld on any legal theory that finds support in the record. *Rosemond*, 331 S.W.3d at 767; *Liberty Mut.*, 295 S.W.3d at 777.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and*

*"Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

### B.  Law on Forfeiture

Forfeiture proceedings are civil in nature. Tex. Code Crim. Proc. Ann. art. 59.05(b) (West 2006). The State must prove by a preponderance of the evidence that the property is subject to forfeiture. *Id.* Money is subject to forfeiture if it is derived from manufacturing, delivering, selling, or possessing a controlled substance. *Id.* arts. 59.01(2), .02(a); *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex. 1991).

In forfeiture proceedings, the State must show probable cause for seizing a person's property. Tex. Const. art. I, § 9; *$11,014.00*, 820 S.W.2d at 784. Probable cause in a forfeiture proceeding is a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *$11,014.00*, 820 S.W.2d at 784. This is accomplished when the State proves that it is more reasonably probable than not that the seized currency was either intended for use in, or derived from, a violation of the offenses listed in the forfeiture statute. *State v. Five Thousand Five Hundred*

11

*Dollars in U.S. Currency*, 296 S.W.3d 696, 701 (Tex. App.—El Paso 2009, no pet.). The substantial connection may be proved by circumstantial evidence. *$11,014.00*, 820 S.W.2d at 785. When relying on circumstantial evidence, "the State is required to offer proof which does more than raise a mere surmise or suspicion regarding the source of money." *Antrim v. State*, 868 S.W.2d 809, 812 (Tex. App.—Austin 1993, no writ) (quoting *Money of the United States $8,500.00 v. State*, 774 S.W.2d 788, 792 (Tex. App.—Houston [14th Dist.] 1989, no writ)).

Here, the record contains only the following testimony from Officer Cade with respect to the items seized:

> Q    (By Ms. Lockhart) And you seized the vehicle under Chapter 59 because you believe it was used or attempted to be used in the commission of a felony; is that correct?
>
> A    Yes.
>
> Q    You also seized cash that you found in Mr. Martinez's wallet because you believe it was proceeds of the felony under Chapter 59; is that correct?
>
> A    Yes.
>
> Q    And you also found a firearm in the vehicle; is that correct?
>
> A    Yes.
>
> Q    And you seized the firearm?
>
> A    Yes.
>
> Q    The firearm was later discovered not to be a firearm under the definitions of the Penal Code; is that correct?
>
> A    Yes.

12

Q    But at the time it looked like a usable gun; is that correct?

A    Yes.

MS. LOCKHART: Nothing further of this witness, Your Honor.

To uphold the forfeiture of the $214.00 in cash found in the wallet on Martinez's person, the State must show that it was more reasonably probable than not that the seized money was derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. Here, there was no evidence that the drug dog alerted on the cash or that it was tested and found to contain traces of illegal substances. Although a syringe and bags containing marijuana and methamphetamine were found in the vehicle that Martinez was driving at the time of the traffic stop, their presence in the vehicle is not evidence that Martinez had derived the money found in his wallet from or had intended to use the money in the manufacturing, delivering, selling, or possession of a controlled substance. *See Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987); *$2067 in U.S. Currency*, 745 S.W.2d 109, 111 (Tex. App.—Fort Worth 1988, no writ) (both stating that the fact that the forfeited property was found near a controlled substance does not establish the nexus between the property and the sale or commercial distribution of a controlled substance). Moreover, the trial court took judicial notice of Martinez's financial records, showing that a deposit in the amount of $674 was made by "SSI Treas" on the day of his arrest, and that two

13

withdrawals totaling $245.00 were made after the deposit on the same date. Martinez thus presented evidence showing where he had derived the $214.00 in cash that remained in his wallet when he was stopped. Considering the evidence favorable to the forfeiture order if a reasonable factfinder could and disregarding the evidence contrary to the forfeiture order unless a reasonable factfinder could not, we hold that the State's evidence raised only a mere suspicion that the money was contraband, and thus, we hold that the evidence is legally insufficient to support the forfeiture of the $214.00 in U.S. currency. *See Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency*, 730 S.W.2d at 662 (holding evidence insufficient because any presumption that may have arisen that the currency was derived from the sale or distribution of illicit drugs was rebutted by appellant's testimony explaining that large amounts of cash were delivered to his home in connection with his construction business); *Barron v. State*, 746 S.W.2d 528, 532 (Tex. App.—Austin 1988, no writ) (holding evidence insufficient to support forfeiture of $198 found on appellant at the time of his arrest because presence of drug ledger and hypodermic needle in vehicle was not evidence of how appellant obtained or intended to use the money); *$2067 in U.S. Currency*, 745 S.W.2d at 111 (holding evidence insufficient to support forfeiture of plastic bags containing capsules and money that was found in bag with note pad of drug dealings because officer neither personally observed appellant in a drug transaction nor had personal knowledge that the money was the proceeds of a drug transaction); *see also $485.00 in U.S. Currency v. State*,

14

No. 03-12-00325-CV, 2014 WL 4364911, at *3–4 (Tex. App.—Austin Aug. 28, 2014, no pet.) (mem. op.) (holding that the fact that cash and cocaine were found somewhere on appellant's person was not, on its own, sufficient circumstantial evidence to support a nexus between the cash and an offense enumerated in the Controlled Substances Act).

Similarly, to uphold the forfeiture of the gun found in the vehicle, the State was required to show that it was more reasonably probable than not that the gun was derived from or intended for use in delivering, selling, or possessing a controlled substance. Martinez argues in his brief that the antique gun was locked in its display case in the trunk; however, Officer Cade did not testify where the gun was found in relation to the drugs other than agreeing that it was found "in the vehicle." Officer Cade admitted that the gun was ultimately determined not to be a firearm under the penal code's definition,[13] therefore lessening the likelihood that it was intended to be used in delivering, selling, or possessing a

---

[13]The Texas Penal Code contains the following definition of "firearm":

"[A]ny device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. Firearm does not include a firearm that may have, as an integral part, a folding knife blade or other characteristics of weapons made illegal by this chapter and that is: (A) an antique or curio firearm manufactured before 1899; or (B) a replica of an antique or curio firearm manufactured before 1899, but only if the replica does not use rim fire or center fire ammunition.

Tex. Penal Code Ann. § 46.01(3) (West Supp. 2014).

controlled substance. Considering the evidence favorable to the forfeiture order if a reasonable factfinder could and disregarding the evidence contrary to the forfeiture order unless a reasonable factfinder could not, we hold that the State's evidence raised only a mere suspicion that the alleged firearm with ammunition was contraband, and thus, the evidence is legally insufficient to support the forfeiture of the alleged firearm with ammunition. *See Sixty-Six Thousand Four Hundred Dollars ($66,400.00) in U.S. Currency v. State*, No. 13-99-00721-CV, 2000 WL 35729670, at *1–2 (Tex. App.—Corpus Christi Dec. 14, 2000, pet. denied) (not designated for publication) (holding evidence insufficient to support conclusion that handgun discovered in spare tire compartment was used or was intended to be used in commission of a felony).

Having held that the evidence is legally insufficient to support the forfeiture of the $214.00 in U.S. currency and the alleged firearm with ammunition, we need not address Martinez's factual sufficiency challenge. *See* Tex. R. App. P. 47.1. We sustain Martinez's first issue.

### V. CONCLUSION

Having found the evidence legally insufficient as to the $214.00 in U.S. currency and the alleged firearm with ammunition, we reverse that part of the trial court's judgment forfeiting $214.00 in U.S. currency and the alleged firearm with ammunition and render judgment that the State take nothing on its claim to the $214.00 in U.S. currency and the alleged firearm and ammunition. Because the

16

forfeiture of the 1995 Chevrolet to the State is unchallenged, we affirm the portion of the trial court's judgment forfeiting the 1995 Chevrolet to the State.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  April 2, 2015